**SULLIVAN, Patrolman, No. 31, Plaintiff-Appellant, v. CIVIL SERVICE COMMISSION OF THE CITY OF EUCLID, OHIO et, Defendants-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23614.   Decided January 26, 1956.

Phillip C. Barragate, Barragate, Wedren, Gottermeyer & Fahrenbach, for plaintiff-appellant.

Paul H. Torbet, for defendants-appellees.

**OPINION**

By SKEEL, J:

This appeal comes to this Court on questions of law from a judgment of the Common Pleas Court of Cuyahoga County finding that there was "sufficient cause for the removal of the appellant as a police officer of the City of Euclid, Ohio." The plaintiff-appellant was a patrolman of the Police Department of the City of Euclid. On June 29th, 1953, an order of suspension was filed with the Civil Service Commission of the City by Gerald J. Sullivan, Chief of Police, as follows:

"Patrolman John Sullivan, Badge No. 31, has been suspended for violating Rule 2, Article 3, being engaged directly or indirectly as a vendor of intoxicating liquors. The rule states that no member of the Department of Police of the City of Euclid, Ohio, shall be engaged directly or indirectly as a vendor of intoxicating liquor."

Upon hearing before the Mayor, the appellant was found guilty and the Mayor filed the following certificate with the Civil Service Commission:

"John L. Sullivan, Patrolman, No. 31, address 168 East 205th Street, Euclid, Ohio, was tried before me July 3rd, 1953, for violating Article 3 of Rule 2 of the Rules and Regulations governing the Euclid Police Department, 'For being engaged directly or indirectly as a vendor of intoxicating liquors' at 21109 Euclid Avenue from April 4, 1953 until June 29, 1953. I found him guilty as charged and dismissed him from the Euclid Police Department."

An appeal was taken to the Civil Service Commission where on July 16, 1953, a hearing was had and a transcript of the testimony taken. The Commission sustained the appellant's dismissal by the Chief of Police and his removal from the Department by the following order:

"The Commission further finds that by virtue of the Charter of the City of Euclid, Article 5, Section 1, the Honorable Kenneth J. Sims, Mayor, heard the within matter, which was brought before him by virtue of the Rules and Regulations of the Department of Police of the City of Euclid under Article 3, Rule 2; that John Sullivan was discharged for specific violation of said rules and regulations.

"The Commission further finds the said removal was for cause.

"It is, therefore, the order of this Commission that the Judgment of the Honorable Kenneth J. Sims, Mayor, be, and is, hereby affirmed."

An appeal was taken from the foregoing order to the Common Pleas Court of Cuyahoga County by notice of appeal filed July 27, 1953, where, upon the hearing on the transcript, the court found there was reasonable grounds for the removal of the appellant. No question is presented by the parties as to the regularity of the proceedings from the filing of charges and the suspension of the appellant by the Chief of Police until the trial on appeal before the Civil Service Commission. Such failure does not waive the question of the jurisdiction of the mayor to hear the complaint and remove the appellant from office hereafter considered.

The only place in the file before us where the order of the Commission is found is in the appellees' brief where only a part of the finding is set forth. We will assume, however, that the full order is properly

journalized upon the records of the Commission, there being no objection to this part of the record in the appeal presented to the Common Pleas Court.

The facts which are the basis of the removal of the appellant are not in great dispute. The appellant between April 4, 1953 and June 29, 1953, was a Patrolman in the Police Department of the City of Euclid, he having joined the force on February 1st, 1949. Sometime prior to the dates first mentioned, the brother of the Chief of Police of Euclid was the owner of The John L. Sullivan Beverage Store located at 21109 Euclid Avenue in the City of Euclid. The State of Ohio had issued to John L. Sullivan a C-2 Permit to sell beer and wine in packages to customers to carry out and not for consumption on the premises at this address. The permit was issued under the authority of §4303.12 R. C. Upon the death of John L. Sullivan, his widow sold the business to the appellant's wife and Ruth Santry who became partners in carrying on the business. When the Chief of Police was informed that his nephew's wife was going to purchase the business from his sister-in-law, he having received such notice from the Liquor Department, on appellant's wife making application for a C-2 License, he informed his nephew, appellant herein, that he would consider that if his wife did go into the business of selling wine and beer to the carry out trade under a C-2 Permit, the appellant would be in violation of Article 3 of Rule 2 of the Police Department of Euclid and subject to dismissal. Rules 1 and 2 and Article 1-3 of Rule 2 are as follows:

"Rule 1: The Chief of Police may suspend from duty, for **hearing by the Director of Public Safety**, any officer or patrolman, who in the judgment of the Chief has violated any rule or order regularly issued by the Department of Police, and every such suspension shall immediately be reported to the **Director of Public Safety** as provided by law; or he may deprive members of their vacation days for violation of any rule.

"Rule 2: The following shall be deemed specific cause for the suspension under charges, of any member of the Department of Police.

"Article 1: For intoxication while on duty, or while in uniform.

"Article 2: For being a user of intoxicating liquor to excess.

"Article 3: For being engaged directly or indirectly as a vendor of intoxicating liquors."

* * * (Articles 4-21 omitted.)   (Emphasis ours.)

The appellant's wife purchased the business with one, Ruth Santry, and, with such partner, proceeded to operate it as The John L. Sullivan Beverage Store. The appellant was then called before the Chief of Police (his uncle), was suspended for violation of Article 3 of Rule 2, for being directly or indirectly engaged as a vendor of intoxicating liquor, found guilty by the order above quoted and upon appeal to the Civil Service Commission, his conviction and removal from office was affirmed for like reason upon the order as above quoted.

His Appeal to the Common Pleas Court was perfected as provided by law in which appeal the court found from the transcript of the evidence that there was sufficient cause for removal, the court holding by its journal entry:

"On appeal under §143.27 R. C. and after due consideration of the Transcript of the evidence, and the briefs of the parties, and the proceedings before the Civil Service Commission being found legal and regular and the cause of appellant's removal as a Policeman of the City of Euclid being sufficient under the evidence, Appeal is denied. Judgment is rendered for the appellee, and for costs. No record."

An examination of the transcript of the evidence taken before the Civil Service Commission shows that the appellant took no part in the actual conduct of the beverage store business. There is no evidence that he was ever in the store at 21109 Euclid Avenue, after the purchase of the business by his wife and her partner, or that he took any part directly or indirectly in the conduct of the business of the store. He did help his Aunt on a few occasions while she was operating the business after her husband's death but such acts are not the subject of the charges filed with the Civil Service Commission by the Chief of Police or were they the subject of the trial before the Mayor. The only evidence in the record which could be the basis of the finding by the Commission that the Mayor was justified in the removal of the appellant for "being engaged directly or indirectly as a vendor of intoxicating liquors" which was affirmed by the Common Pleas Court is that the appellant might derive some financial benefit or be relieved of some financial burden because of his wife's activities in The John L. Sullivan Beverage Store. The City in its brief, in support of its contention that there were sufficient grounds for the removal of appellant quotes from the trial court's Memorandum as follows:

"Surely the Civil Service Commission was entitled to conclude from this evidence that any proceeds from Valerie Sullivan's work or share of the profits in The John L. Sullivan Beverage Store would be added to the common Sullivan family fund and dispersed by Valerie Sullivan for the benefit of the appellant and his children, whom he had the primary duty to support.

"Even had the appellant been a record owner or an actual employee of The John L. Sullivan Beverage Store, it is not likely that he would have secured any different or greater financial benefit.

"But even had Valerie Sullivan spent all proceeds from The John L. Sullivan Beverage Store solely on herself, such application of the monies derived from the sale of beer and wine would have necessarily lightened the responsibility of the appellant to support his wife and thus he would have directly gained.

"The Civil Service Commission further might have found from the evidence that this common family fund, in which would be mingled patrolman's pay and beer and wine profits, might well have been subject to pay off present or future obligations of Valerie Sullivan arising out of the ownership or operation of The John L. Sullivan Beverage Store."

The words of Rule 2, Article 3, "to engage directly or indirectly as a vendor of intoxicating liquor," cannot be so interpreted as prohibiting financial gain from the sale of such commodities. If it could be said that the appellant had an interest in the business or induced persons to patronize the store or in any other way contributed to or induced sales

of packaged intoxicating beverages as part of and in furtherance of the business conducted by his wife, then there could be no doubt but that he would be in violation of the rule but there is not a bit of evidence to support any such contention. The fact that there may be a financial benefit derived by the appellant does' not establish or tend to establish "engaging directly or indirectly as a vendor of intoxicating liquor."

It is also argued or suggested that the interpretation of the rule must be broadened to include a prohibition of his wife's being engaged in such business because her conduct might be such as to require the defendant, in the discharge of his duties as a police officer, to make an investigation of her place of business to determine if the law is being violated or to arrest her for violating laws regulating the sale of intoxicating beverages and that it would be difficult for him to perform his duties as a policeman under the circumstances, or that he might be negligent in performing his duties by reason of his relationship to the part owner of the business. The answer to that contention is that if the time ever comes when such a charge of malfeasance or misfeasance in office might be justified, such charge should be filed against him and prosecuted in due form.

We find no evidence in this record to justify the conclusion that the appellant violated Rule 2, Article 3, of the Rules of the Police Department of the City of Euclid promulgated by the Director of Public Safety as published in 1950 and shown by City's Exhibit No. 1.

It should be noticed that the Rules of the Department provide that:

"The following shall be deemed specific cause for the **suspension** under charges of any member of the Department of Police." (Emphasis ours.)

It is clear that the Rules were adopted upon the authority of §737.13 **R. C.,** which provides:

"The director of public safety of a city shall classify the service in the police and fire departments in conformity with the ordinance of the legislative authority thereof determining the number of persons to be employed in the departments, and shall make all rules for the regulation and discipline of such departments, except as otherwise provided by law."

**Sec. 737.12 R. C.,** also provides:

"The chief of police and the Chief of the fire department shall have exclusive right to suspend any of the deputies, officers, or employees in their respective departments and under their management and control, for incompetence, gross neglect of duty, gross immorality, habitual drunkenness, failure to obey orders given them by the proper authority, or for any other reasonable and just cause.

"If any such employee is suspended, the chief of police or the chief of the fire department, as the case may be, shall forthwith certify such fact in writing, together with the cause for such suspension, to the director of public safety, who, within five days from the receipt thereof, shall proceed to inquire into the cause of such suspension and render judgment thereon. Such judgment, if the charge is sustained, may be either suspension, reduction in rank, or dismissal from the department. Such judgment shall be final except as otherwise provided by law.

"The director, in any investigation of charges against a member of the police or fire department, shall have the same powers to administer oaths and to secure the attendance of witnesses and the production of books and papers as are conferred upon the mayor."

This section provides the penalties that may be imposed for "incompetence, gross neglect of duty, gross immorality, habitual drunkenness, failure to obey orders given by the proper authority or for any other reasonable and just cause." The penalties are:

"Suspension, reduction in rank or dismissal from the Department." The word suspension here means to withhold the right to exercise the duties of the office of a policeman for a limited time. The word "suspension" as used in the Rules of the Police Department of the City of Euclid must be given the same interpretation as the word is given in the statutes granting the power to establish them. Where the grounds depended upon as the basis for disciplinary action against a police officer is an article within a rule which prescribes the limits of the penalty to be invoked for its infraction, any greater penalty than that provided for in the rule imposed against one found in violation of such article is contrary to law. A holding upon appeal from an order removing a police officer from office for the alleged violation of an article of such rule (there being no provisions for removal) that there was sufficient cause for removal, must be reversed as contrary to law.

The final question presented by this record is whether or not the Mayor of the City of Euclid is vested with power to try a police officer upon charges and to take disciplinary action against him if in the judgment of the Mayor, the charges are sustained by sufficient evidence. There is no provision for the appointment of a safety director by the Charter nor does the Charter directly spell out procedure to be followed where charges are filed against a police officer except to say that the Mayor shall have power of appointment or removal of a police officer from office subject to State Law.

The Rules, the violation of which is the basis of this action, specifically provide:

"The Chief of Police may **suspend** from duty for hearing by the Director of Public Safety * * *." (Emphasis ours.)

No mention of the Mayor is found anywhere in the Rules as adopted. If the Mayor was vested with power to hear charges filed against a member of the police department, it must be found elsewhere in the Charter. We find no such provision.

This Court, as was true of the trial court, will take judicial notice of the classification of Municipal Corporations and their advancements, reduction and surrender of powers. (Sec. 703.23 R. C.) The City of Euclid, as is shown by the evidence, and as is known to the Court by reason of judicial notice, is a Charter City deriving its powers of government directly from **Art. 18, Secs. 3 and 7 of the Ohio Constitution,** its Charter having been adopted by the Electors of the City on June 19, 1951, Effective January 1st, 1952. The powers of the Mayor are provided for by Art. 4 of the Charter. Section D of the Charter is as follows:

"The Mayor shall exercise supervision and control of all the execu-

tive departments and divisions of the City. He shall be the chief conservator of the peace within the City and shall see that all laws, ordinances, and resolutions are faithfully obeyed and enforced. He shall have the power to appoint, promote, transfer, reduce, or remove any officer or employee of the City, but such power shall be subject to the other provisions of this Charter, **or to the Laws of Ohio where it is beyond the competence of this Charter to provide**: and such power of removal shall be exercised over a member of a Board or Commission after complaint and hearing, only for neglect of duty, incapacity, incompetency, or malfeasance in office." (Emphasis added.)

Article 5 of the Charter, Sec. 1 provides:

"The City shall have a Department of General Administration, a Department of Service, a Department of Finance, and a Department of Law. The Mayor shall appoint as the head of each department, a director, who shall exercise supervision and control of his department and who shall serve at the pleasure of the Mayor. Each director shall have such powers and duties as shall be prescribed by this Charter and the Council. There shall be a Department of Police and a Department of Fire under the supervision of chiefs, as prescribed by the Laws of Ohio, responsible to the Mayor, who shall be the executive head thereof. The City shall also have a Civil Service Commission, a City Planning Commission, and a Recreation Commission. The Counncil may by ordinance establish additional departments, boards, or commissions, or divisions thereof, and provide for them as it may deem necessary. With the exception of the departments, boards, or commissions established by this Charter, the Council may combine or abolish any department, division, board, commission, non-elective office, or job classification and may authorize one person to serve in any capacity in two or more departments, divisions, boards, or commissions, when such positions are not incompatible."

Art. 5, Sec. 7, provides in part:

"The Civil Service Commission shall provide by rule for the ascertainment of merit and fitness as the basis for appointment and promotion in the service of the City as required by the Constitution of Ohio, and for appeals from the action of the Mayor in any case of transfer, reduction, or removal. The action of the Commission on any such appeal shall be final except as otherwise provided by the Laws of Ohio. * * *"

These sections of the Charter recognize that in dealing with police officers, there are areas in which the State Law supersedes the Rules adopted by Charter or Ordinances passed as authorized by the Charter. The extent of the power conferred through the Home Rule Article of the Constitution of Ohio upon Municipal Corporations must be limited to those subjects that are of local concern because such corporation must of necessity remain a part of and subject to the control of the State on all matters of state-wide significance. The cases recognize a distinction between "municipal affairs" and "questions of state-wide concern." By what may be called the majority view, the function of preserving law and order is a matter of state-wide concern, the municipal corporation being merely an agency of the state in the field of criminal law enforcement.

It is for this reason that the management of the Police Department, the primary agency of law enforcement, is controlled in matters of tenure of office, by state law which, of necessity, must supersede local control. 105 A. L. R. 244, Annot. 259. **Cincinnati v. Gamble, 138 Oh St 220.**

The Supreme Court of Ohio, in dealing with this question, in the case of **State, ex rel. v. Sherrill, 142 Oh St 574,** said:

"1. **Section 3, Article XVIII of the Constitution,** which grants to municipalities authority to exercise al powers of local self-government, including the power to adopt and enforce within their limits such local police, sanitary and other similar regulations as are not in conflict with general laws, has application to every city and village regardless of whether it has adopted a charter form of government.

"2. The words 'general laws,' as used in the phrase 'not in conflict with general laws' in **Section 3, Article XVIII of the Constitution,** refer to laws enacted by the General Assembly.

"3. A city or village which adopts a charter for its government pursuant to the permissive authority granted by the Constitution or the General Code does not thereby become an independent sovereignty and such municipality has no greater power to exercise local self-government than a non-charter municipality.

"4. In general, matters relating to the members of a police department are of state-wide concern and are under the control of state sovereignty.

"5. The acts passed by the General Assembly which provide that in each city there shall be a department of public safety administered by a director of public safety who shall have all powers and duties connected with and incidental to the appointment, regulation and government of the police department, and the power to inquire into the cause of suspension of any police officer and to render judgment thereon, are 'general laws' within the meaning of **Section 3, Article XVIII of the Constitution.**

"6. Where a charter of a municipality and an administrative code enacted under authority thereof grant to a municipal officer, called a city manager, power to appoint, dismiss, suspend and discipline all officers in the administrative service (which service includes members of the police department), such provisions in the charter and administrative code cannot prevail as against the provisions of the General Code; and a police officer, suspended for the claimed violation of certain rules of the police department, has a right to insist that the director of public safety inquire into the cause of such suspension and render judgment thereon regardless of such provision in the city charter or administrative code.

"7. A writ of prohibition will be awarded to prevent the city manager of any city not organized pursuant to §3515-19 et seq, GC, from inquiring into the cause of suspension of a police officer of such city or rendering judgment thereon, where such threatened action is contrary to law."

**Sec. 737.11 R. C.,** provides in part:

"* * *

"The police and fire departments in every city shall be maintained under the Civil Service System."

Sec. 737.01 R. C., provides:

"In each city there shall be a department of public safety, which shall be administered by a director of public safety. The director shall be an elector of the city and shall be appointed by the mayor."

Sec. 737.02 R. C., provides in part:

"He (the director of public safety) shall have all powers and duties connected with and incident to the appointment, regulation and government of these departments (Fire and Police) except as otherwise provided by law."

Sec. 737.12 R. C., supra, provides that the Chief of Police has the exclusive right to suspend a police officer for causes mentioned in the statute and the procedure to be followed by notice to the **director of public safety** who shall conduct the trial and impose the penalty if the facts justify imposition of any of the penalties therein provided for.

Sec. 143.27 R. C., dealing with "Civil Service" provides:

"The tenure of every officer or employee in the classified service of the state and the counties, cities, and city school districts thereof, holding a position under §143.01 to 143.48, inclusive, R. C., shall be during good behavior and efficient service; but any such officer or employee may be removed for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of such sections or the rules of the commission, or any other failure of good behavior, or any other acts of misfeasance, malfeasance, or nonfeasance in office.

"In all cases of removal, the appointing authority shall furnish such employee with a copy of the order of removal and his reasons for the same, and give such officer or employee a reasonable time in which to make and file an explanation. Such order with the explanation, if any, of the employee shall be filed with the commission. Any such employee so removed may appeal from the order of such appointing authority to the state civil service commission or the municipal civil service commission, as the case may be, within ten days after the date of such removal, in which event the commission shall forthwith notify the appointing authority and shall hear, or appoint a trial board to hear, such appeal within thirty days from and after its filing with the commission, and it may affirm, disaffirm, or modify the judgment of the appointing authority, and the commission's decision is final. In the case of the suspension, demotion or removal of a chief of police or a chief of the fire department or any member of the police or fire department of a city, an appeal on questions of law and fact may be had from the decision of the municipal civil service commission to the court of common pleas of the county in which such city is situated. Such appeal shall be taken within ten days from the finding of the commission."

From the foregoing sections, it is crystal clear that in a City, the method by which charges against one who is a member of a police department may be filed and the procedure and jurisdiction to try the questions presented are in the Director of Public Safety. Such a function is quasi-judicial in nature (State, ex rel. v. Sherrill, supra, page 585), and the fact that the appellant submitted to the alleged jurisdiction of the

Mayor to determine the issues of fact and law presented by the charges did not confer upon the Mayor jurisdiction. **Rohn v. Dunbar, 13 Oh St 572, Gilliland v. Admr. of Seller's 2 Oh St 223, Sherrets v. Tuscarawas Savings & Loan Co., 78 Oh Ap 307, 70 N. E. 2nd 127.**

The Charter of the City of Euclid does not provide for a Director of Public Safety but there is provision which authorizes the Council to create necessary departments. The law requires that there shall be a director of public safety in a City. The Charter of the City of Euclid cannot change the rule as thus provided. The Mayor was, therefore, without power to hear and determine the charges against the appellant and until such charges are the subject of a legal hearing before one authorized by law to pronounce judgment, there is no lawful order from which an appeal can be taken to the Civil Service Commission.

For the foregoing reasons, the judgment of the common pleas court is reversed as contrary to law and against the evidence.

Exceptions. Order see journal.

KOVACHY, PJ, HURD, J, concur.