William ANDREU, Plaintiff–Appellee,

v.

Glen E. SAPP, individually and as Sheriff of Charlotte County, and William E. Reilly, Defendants–Appellants.

No. 89–3054.

United States Court of Appeals,
Eleventh Circuit.

Dec. 18, 1990.

Keith C. Tischler, Tallahassee, Fla., for defendants-appellants.

Leonard M. Johnson, David K. Oaks, Punta Gorda, Fla., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, and ANDERSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Glen Sapp, the Sheriff of Charlotte County, Florida and William Reilly, his chief deputy, appeal the district court's denial of their motion for summary judgment. The case originated when William Andreu, a former deputy in the Charlotte County Sheriff's Office filed a complaint in the United States District Court for the Middle District of Florida, alleging federal constitutional violations and various state claims arising out of his arrest and subsequent discharge by the defendants.[1] The defendants sought summary judgment on the basis of qualified immunity. Because we find that the plaintiff has alleged violations of clearly established rights with respect to two of the claims, we now affirm.

## I.

In April 1986, William Andreu was a Charlotte County Deputy Sheriff having been an employee of the department since 1979. That month, the Sheriff's Department began an investigation into whether Andreu knowingly purchased a stolen gun from James Hall, a seventeen-year old friend of his son. After several interviews with Hall, his mother, and Andreu, the deputies investigating the theft concluded that Andreu knew that the gun was stolen and that he had instructed Hall to give a false statement to the deputies concerning Andreu's knowledge of the theft.

Andreu denied all wrongdoing. Nevertheless, on April 18, 1986, he was arrested and charged with fabricating evidence, official misconduct, compounding a felony, and accessory to burglary. Andreu was then suspended from duty without pay on the instructions of Acting Sheriff John McDougall. Thereafter, Andreu's criminal case was scheduled for trial in October 1986. The morning of the trial the state attorney announced that he had dismissed the charges against Andreu.

Andreu then sought to return to his position with the department. At that time Glen Sapp, who had been on suspension himself, had returned to his position as Sheriff. Sapp told Andreu that he would consider the request for reinstatement. On November 21, 1986, however, Sapp notified Andreu that he was discharged from his position as deputy sheriff. After concluding that the recently enacted civil service statute did not apply to Andreu, Sapp denied Andreu's request for a hearing and certain other procedures required by the Act.

Andreu then brought this action. After discovery, the defendants sought summary judgment on many of the claims. With respect to the due process claims and the false arrest claim, the defendants sought summary judgment on the ground that qualified immunity protected them from suit.[2] The district court denied summary judgment on these claims after finding that there were disputed issues of material fact preventing summary judgement. The defendants then brought the instant appeal.

## II.

Before discussing the merits of the defendants' claims, we will briefly review the jurisdictional basis of this interlocutory appeal. Denials of summary judgment are usually considered interlocutory orders over which this court may not provide immediate review. *Peppers v. Coates*, 887 F.2d 1493, 1495 (11th Cir.1989). However, in *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court held that a district court's

---

1. The four count complaint alleged: (1) wrongful discharge; (2) slander and defamation; (3) violations of due process; and (4) false arrest. The due process count included two different claims, one for failing to provide notice and a hearing before discharge, and a second for failing to provide a name clearing hearing after discharge.

2. The other claims raised by the defendants in the summary judgment are not relevant to this appeal.

denial of a defendant's motion for summary judgment on the basis of the defense of qualified immunity is a decision "which finally determine[s] claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 524–25, 105 S.Ct. at 2814, (quoting *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949)). The basis for the Court's application of the "collateral order doctrine" to the pre-trial rejection of qualified immunity claims is that qualified immunity—in addition to providing a "defense" to the state official—provides the official with an "entitlement not to *stand trial*" when the plaintiff has failed to allege that the defendant has violated "clearly established rights." *Forsyth*, 472 U.S. at 525, 105 S.Ct. at 2815. Thus, because the defendants are appealing the district court's denial of their motion for summary judgment on the basis of qualified immunity, we have jurisdiction over this case to determine if the defendants were entitled to summary judgment as a matter of law.

### III.

A defendant is entitled to a pre-trial dismissal on the basis of qualified immunity under two circumstances. First, the defendant is entitled to dismissal when the plaintiff has failed to *allege* a violation of a clearly established right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396 (1982). In such a case the defendant may be entitled to a dismissal even before discovery, *Forsyth*, 472 U.S. at 526, 105 S.Ct. at 2815, but if "substantial factual development" is necessary before the court can identify the set of facts implicating a clearly established right that the defendant has allegedly violated, the district court should defer ruling on the qualified immunity issue. *Cf. Riley v. Wainwright*, 810 F.2d 1006, 1007 (11th Cir. 1987). In this first instance, it is the plaintiff's allegations that determine whether the defendant is entitled to immunity be-

cause (as with all motions for judgment on the complaint or pleadings) the plaintiff's factual allegations are taken as true. *See* Fed.R.Civ.P. 12(b), 12(c) (motions for judgment relying on matters outside the pleadings are transformed into summary judgment motions).

Second, the defendant is entitled to summary judgment on the issue of qualified immunity when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits [filed in support or in opposition to the motion], if any, show that there is no genuine issue as to any material fact" concerning whether the defendant has violated a clearly established right; in such a case, the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Bennett v. Parker*, 898 F.2d 1530, 1532 (11th Cir.1990) (applying Rule 56 and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) to determination of whether defendant is entitled to qualified immunity). To resist summary judgment, the plaintiff must "set forth specific facts showing that there is a genuine issue for trial." *Bennett*, 898 F.2d at 1532 n. 1 (citing Rule 56(e)). At this stage, factual disputes are resolved by accepting the plaintiff's version of the facts. If the facts, when considered in a light most favorable to the plaintiff, fail to establish a violation of a clearly established right, the defendant is entitled to summary judgment notwithstanding the presence of any factual disputes because resolution of these disputes is not material to the outcome of the case. *Id.* Thus, when the district court actually rules on a pre-trial motion based upon qualified immunity (as opposed to deferring its ruling to await factual development as the court did in *Riley, supra*), the court determines *a question of law*—whether or not the plaintiff's factual scenario states a violation of clearly established rights.

### IV.

In this case the defendants argue that they are entitled to qualified immunity on

three of the plaintiff's claims. First, the defendants claim that the district court erred in refusing to dismiss the false arrest claim on qualified immunity grounds because (assuming that probable cause did not exist for the arrest) it was reasonable for the defendants to have believed that probable cause did exist. Second, the defendants allege the plaintiff's right to a pre-discharge hearing was not clearly established at the time of his discharge because the Florida statute giving the Charlotte County deputy sheriffs civil service status went into effect while Andreu was suspended, therefore making it unclear whether the Act applied to him. Finally, the defendants argue that they are entitled to qualified immunity with respect to Andreu's claim that he was entitled to a name clearing hearing to rebut the allegedly slanderous statements made by Sapp and Reilly at the time he was fired. The defendants contend that it was not clearly established that police officers could not comment on an investigation when the person under investigation was one of the department's employees. We address each of these claims in turn.

### False Arrest

First, defendant Reilly argues that the district court erred in refusing to grant summary judgment on the plaintiff's claim that the he was arrested without probable cause.[3] It is not clear from the complaint and the record in this case whether this claim is a 42 U.S.C. § 1983 action based upon the violation of the fourth amendment or a state based claim arguing that the defendants committed the intentional tort of false arrest. The district court and the defendant considered this claim to be a section 1983 action. At oral argument, however, the plaintiff's attorney characterized this claim as being based upon state law. Twice the plaintiff's attorney was asked whether the false arrest claim was based upon state law or the federal constitution. Both times he indicated that the claim was based upon state law. As this is

the plaintiff's claim, we accept this characterization.

■ As noted above, we have jurisdiction over this appeal only because the defendants challenge the denial of a motion for summary judgment on the basis of qualified immunity. Qualified immunity is a defense to federal causes of action and does not protect officials from claims based upon state law. Therefore, we are without jurisdiction to review the district court's ruling relating to this claim. We note that on remand the district court should not permit the plaintiff to contradict the characterization made in this court and assert a federal cause of action with respect to this claim. No error was made by the district court with respect to this issue and we do not consider it.

### Pre–Discharge Hearing Claim

After Andreu's arrest on April 18, 1986, he was "suspended without pay pending the outcome of an internal investigation." R1–21. The suspension was authorized by Acting Sheriff McDougall and officially communicated to Andreu by a written notice signed by Chief Deputy William Reilly. At the time of Andreu's suspension, deputy sheriffs in Charlotte County were at will employees of the Sheriff. During the suspension period, however, the Florida Legislature enacted a civil service system for Charlotte County Sheriff's office employees. Fla.Laws Ch. 86–349 (effective May 28, 1986). The Act provided covered employees certain procedural protections and limited the Sheriff's ability to discharge deputies absent cause. *Id.*

After the charges against Andreu were dropped, he sought reinstatement to his position. At this point he was told that his future status with the department was under consideration. In an October 21, 1986 newspaper article Sapp was quoted as saying that he would make a decision about Andreu's job in a couple of days. In addition, the article noted that Sapp did not feel bound by the civil service requirements be-

---

**3.** The district court dismissed the claim against Sheriff Sapp as he was not the Sheriff at the time the arrest occurred.

cause he felt that "he ha[d] the power to *fire* Andreu" if he wanted. R1–1 at Exhibit B (emphasis added). On November 21, 1986, Sapp wrote Andreu to notify him that he was exercising that right. The letter stated that Andreu was "officially *terminated* from the [department] as of October 31, 1986." *Id.* at Exhibit A (emphasis added). The letter also indicated that the office would be sending a "termination card" to the Police Standards Office in Tallahassee as was required when an officer was discharged. *Id.* Included with the letter was a check for Andreu's back pay. The check included Andreu's regular salary and vacation pay from the date of his suspension through October 31, 1986. R2–33–6.

Andreu argues the 1986 Act created a state law based property interest in his job that is recognized by the due process clause of the fourteenth amendment. *Bishop v. Wood*, 426 U.S. 341, 343–44, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). The defendants concede that if Andreu had acquired these rights under the Act, he could not have been discharged absent notice and a hearing which were admittedly not given. *See Harden v. Adams*, 760 F.2d 1158, 1167 (11th Cir.1985) (public employee with property interest in job entitled to notice and pre-discharge hearing). The defendants, however, argue that because Andreu was suspended when the Act went into effect, his status under the Act was uncertain. They argue that this uncertainty dictates the conclusion that whatever rights Andreu had under the Act were not clearly established at the time of his discharge. Therefore, the defendants contend that the district court erred in refusing to grant summary judgment on this claim.[4]

By its terms, the Act applied to all persons (including deputies) "in the employ" of the Charlotte County Sheriff's Office as of May 28, 1986. Fla.Laws Ch. 86–349 at § 4. The parties do not dispute the obvious conclusion that if Andreu was "in the employ" of the Sheriff's Office during his suspension, his discharge violated his rights under the constitution. Thus, the defendants are not entitled to qualified immunity if it was clearly established that the plaintiff was "in the employ" of the office.

The district court refused to grant summary judgment holding that the Act applied to Andreu because he was suspended not terminated. In addition, the court held that summary judgment was not appropriate because a disputed issue of fact exists as to whether the law was sufficiently clear so that the defendants should have known that the Act applied. As the defendants point out, this analysis is incorrect. The question of whether a right is clearly established is a question of law for the court to decide. *Hudgins v. City of Ashburn*, 890 F.2d 396, 403 (11th Cir.1989) (question of whether it was clearly established that city code creates property interest in job is "purely a legal question for the court to decide"). Questions such as whether the law was sufficiently developed so that the right alleged to be violated was clearly established are beyond the expertise and competence of the jury. Thus, we undertake to answer the legal question of whether a reasonable official in the defendants' place would have understood that the Act applied to Andreu.

The defendants argue that Andreu's suspension before the Act went into effect was in reality a discharge. Absent a civil service requirement imposed by the legislature, the status of a deputy sheriff is clearly that of an at will employee. *See Ison v. Zimmerman*, 372 So.2d 431 (Fla.1979); *Blackburn v. Brorein*, 70 So.2d 293 (Fla.

---

4. The defendants do not contend that the right to a notice and a hearing before discharge held by employees with property interests in their jobs was not clearly established in 1986. While the Supreme Court held in *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984), that this right was not clearly established in 1977, *Harden*, which was decided in 1985, cleared up any confusion. By 1986 it was clearly established that a public employee with a property interest in his job had the right to notice and a hearing before the employee could be discharged. The sole dispute in this case is over whether Andreu had a clearly established property right in his job.

1954). The only guidance on the status of a suspended deputy sheriff comes from a 1973 opinion from the attorney general. That opinion concludes that a sheriff can suspend a deputy sheriff without pay as a disciplinary measure when the deputy has committed an act that does not warrant dismissal. 1973 *Op.Att'y Gen.* 146, 147 (No. 073–91A April 23, 1973). The defendants argue that the suspension in this case was not for disciplinary purposes because it was indefinite in length. They emphasize the fact that Andreu could not act as a deputy during the period of his suspension and argue that Andreu was discharged rather than suspended. If he was discharged, they argue, he was not in the employ of the office at the time the Act went into effect.

The attorney general opinion does not support the distinction that the defendants attempt to make in this case. While a prior opinion came to the conclusion that a sheriff has no authority to suspend a deputy, 1973 *Op. Att'y Gen.* 145, 146 (No. 073–91 March 29, 1973), that opinion was modified to recognize the longstanding practice of suspending deputies when their conduct did "not warrant dismissal." 1973 *Op. Att'y Gen.* at 147. The requirement that a sheriff limit a suspension to a specified period of time does not appear on the face of the opinion. In addition, we do not think that it is reasonable to imply this requirement from the opinion. The revised opinion defers to the views of the Sheriffs that their explicit power to fire a deputy included the power to suspend. The fact that the power to suspend a deputy exists by implication is inconsistent with imposing strict limitations on that power. Finally, we do not think that the fact that Andreu could not act as a deputy is in any way inconsistent with his being suspended.

In addition, the actions of both acting Sheriff McDougall and Sheriff Sapp show a recognition of the power to suspend a deputy in a case such as this one. No one questions that Acting Sheriff McDougall had the power to discharge Andreu in April and then appoint him again after an internal investigation if he so chose. Nevertheless, he chose to suspend Andreu pending an investigation. As the district court recognized, a suspension is commonly understood as "temporary withdrawal or cessation from employment as distinguished from permanent severance accomplished by removal." *Blacks Law Dictionary* at 1297 (5th Ed.1979).[5] That Andreu's suspension was thought to be a temporary withdrawal of his position as a deputy is evidenced by Reilly's letter noting that the suspension was pending an internal investigation. If the department intended to permanently remove Andreu, no investigation would be necessary. In addition, the department apparently did not notify the police standards office of Andreu's removal as a deputy until after Sapp "discharged" him. The fact that no one had done so in April is further evidence that the department did not consider the action it had taken against him to be a permanent removal.

Sapp also recognized that Andreu was suspended. As noted above, he felt it necessary to notify Andreu that he was "discharged effective October 31, 1986." If the suspension had amounted to a permanent removal, a letter discharging him would not have been necessary. At the very least, the letter would have indicated that the department would not appoint Andreu to a new position. In addition, if Andreu had been permanently removed in April, it would not have been necessary to refer to an October 31 effective date. Finally, and perhaps most significantly, the

---

5. *Webster's Third New International Dictionary Unabridged* (1976), defines "suspension" as:
[T]he act of suspending or the state or period of being suspended, interrupted, or abrogated; ... temporary forced withdrawal from the exercise of office, powers, prerogatives, privileges as a member or communicant.
The parties did not furnish us with court opinions defining the word "suspension." Our

review of a few of the cases discloses that the courts have uniformly treated suspension from public office in the same manner as the district court. *See Myers v. City of Oakdale,* 409 N.W.2d 848 (Minn.1987); *Smith v. City and County of Denver,* 39 Colo.App. 421, 569 P.2d 329 (1977); *Sullivan v. Civil Service Comm. of City of Euclid,* 102 Ohio App. 269, 131 N.E.2d 611 (1956).

letter discharging Andreu included a paycheck for the entire period of his suspension. It seems a rather simple proposition that a discharged employee is not entitled to be paid. Or to state it another way, one does not pay people who are not in one's employ. The district court correctly concluded that since Andreu was not discharged in April, he was in the employ of the Sheriff's Office on May 28, 1986 and therefore was covered by the Act.

Our finding that the Act applied to Andreu does not end our inquiry. In order to defeat the defendants' invocation of qualified immunity, Andreu must show that the Act clearly applied in his situation. A right is clearly established when a reasonable official in the place of the defendant would have known that his conduct violated clearly established rights. *See Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. In this case, the question is whether a reasonable official in the place of the defendants would have known that Andreu was in the employ of the Sheriff's Office on May 24, 1986.

We do not think that the Act posed difficult questions for the Sheriff's department. The only exceptions to coverage under the Act were the senior officials of the Sheriff's department. The Act did not explicitly exclude suspended employees. In addition, the concepts involved were not highly technical or even legalistic. We think that a reasonable official would conclude that a person who was entitled to financial compensation was in the employ of his department. Nor is it especially difficult to distinguish between a suspension and a discharge. A reasonable official in the place of the defendants would have realized that a deputy who had been suspended was still "in the employ" of the department. While qualified immunity protects a defendant from liability when the legal concepts that make up the plaintiff's claim are not clear, the defense cannot be manipulated by arguing that the common sense meaning of a familiar term is unclear merely because a court has yet to construe the term.[6] Application of these principles is especially appropriate in a case such as this one because the defendants' actions indicate that they understood that Andreu was still an employee. *Cf. Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (qualified immunity does not protect defendants who "knowingly violate the law"). Therefore, we affirm the denial of summary judgment on this claim.

### Liberty Interest ("Stigma Plus") Claim

 After the case against Andreu was dropped, the local press made inquiries about the case. Sapp, Reilly, and other officers were quoted in an October 21, 1986 newspaper article defending the department's actions against Andreu notwithstanding the fact that the charges had been dropped. Sapp and Reilly both noted in the article that the question concerning Andreu's status with the department was still under consideration. Andreu introduced the article which quoted Sapp as saying:

"[T]here certainly are areas (of Andreu's case) that trouble me." Sapp said.

"I think in the whole incident there were things done by Bill to create an atmosphere that everything was OK, when in fact it wasn't." Sapp said. "I have partially reviewed the investigation, and I'll probably make a decision about his job in a couple days."

R1-1 at Exhibit B. In the same article, Reilly was quoted as saying:

"[W]e found the criminality in that case, even if other agencies didn't." Chief Deputy William Reilly said. "There was probably cause for that arrest."

*Id.* Later in the article Reilly noted:

"I don't know what the sheriff will decide, but personally, I can't see why he wants to come back here." Reilly said. "Before all this happened, (Andreu) put

---

**6.** The defendants emphasize the fact that there was almost no legal guidance concerning whether Andreu was an employee. While generally confusion in the law is a factor that favors the defendant in the qualified immunity analysis, *Harden*, 760 F.2d at 1166 n. 3., in this case the lack of precedent does not aid the defendants' claim of immunity. Most likely the paucity of precedent is due to the fact that a reasonable person would not expend resources to litigate whether an employee who was suspended, paid for the period of the suspension, and then later discharged was an employee during the time of his suspension.

out a lot of work. Now, I think he'd find it very hard working with the men back here."

*Id.*

Andreu claims that these statements were false and stigmatizing and therefore, violated his liberty interest in his reputation because the statements were made in connection with his discharge. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The defendants argue that they are entitled to qualified immunity because it was not clearly established that the statements they made as police officers concerning Andreu's arrest constituted a due process violation.

In *Buxton v. City of Plant City, Fla.,* 871 F.2d 1037, 1042 (11th Cir.1989), this court noted that in order for a discharged government employee to succeed in showing a violation of a liberty interest, the plaintiff must show: (1) a false statement of a stigmatizing nature; (2) attending a governmental employee's discharge; (3) made public by the governmental employer without a meaningful opportunity for the employee to refute the charge. In this case, the defendants challenge whether it was clearly established that (1) the statements were stigmatizing; (2) that they were made in the course of the plaintiff's discharge; and (3) it was necessary to give Andreu a hearing to refute the charges.[7] The defendants argue that mere reference to pending criminal proceedings is not stigmatizing when there is no allegation that the accused committed a criminal act and it is evident from the statement that the charges have been dropped. The defendants rely on *Hadley v. County of Du-Page,* 715 F.2d 1238, 1246 (7th Cir.1983), for this proposition. We find that case

distinguishable. In *Hadley* the official stated that the plaintiff had not been fired based upon "any pending criminal indictments." *Id.* The court rejected the argument that the reference was stigmatizing because the context of the statement made it clear that the officer was trying to convey the point that the plaintiff was discharged for misconduct unrelated to any criminal charges. *Id.* In this case, Reilly defended the department's actions in arresting Andreu by arguing that the department found his actions to be criminal. In addition, Sapp alleged that Andreu sought to cover up his actions. These statements are qualitatively different from the ones in *Hadley.* At the time of Andreu's discharge, it was clearly established that these statements were stigmatizing. *See Owen v. City of Independence, Mo.,* 445 U.S. 622, 633 n. 13, 100 S.Ct. 1398, 1406–07 n. 13, 63 L.Ed.2d 673 (1980) (statements alleging criminal acts "impugn[e] petitioner's honesty and integrity" and constitute a violation under *Paul* and *Roth* ).

The defendants' second argument is that it was not clearly established that these statements were made in the course of Andreu's discharge. As a factual matter, we note that Andreu was discharged effective October 31, 1986 but was not notified of this fact until November 21, 1986. The defendants argue that since the statements appeared approximately one month prior to the notification, it would not have been clear that the statements were made in the course of Andreu's discharge. Assuming for the sake of argument that the November date is the relevant one, we still find the defendants' contention unavailing. From the article itself, it is clear that the defendants were currently considering Andreu's employment status. Given that both defendants referred to the pending decision

---

7. In their brief, the defendants argue that the statements Sapp and Reilly made were substantially true. Andreu's affidavit, however, creates a material issue of fact regarding this issue. For example, in the article, Sapp stated that he was troubled by the fact that Andreu tried to cover up his wrongdoing. In his affidavit, however, Andreu states that he answered all of his

superiors' questions and even requested that they give him a lie detector test. Similarly, Reilly's statement that the department found criminal conduct is refuted by the plaintiff's affidavit recounting his version of the incident which, if true, would not amount to criminal conduct.

regarding Andreu's employment, the fact that the decision to discharge Andreu was not made until a month after the statements is irrelevant to whether the statements were made in the course of Andreu's discharge.

It is true that statements remote in time from the employment decision are not actionable. In *Hadley,* the court found statements made two years *after* the plaintiff was discharged were not close enough in time to be in the course of the discharge. 715 F.2d at 1246–47. When shorter time periods have been found to be sufficiently attenuated, the defamatory statements were not explicitly connected to the discharge. *See, e.g., Brennan v. Hendrigan,* 888 F.2d 189, 196 (1st Cir.1989) (articles appearing two months after discharge not in connection with plaintiff's dismissal when no evidence existed that defendants made any statements to press); *Ewers v. Board of County Com'rs of Curry County,* 802 F.2d 1242, 1248 (10th Cir.1986) (allegedly defamatory statement not made in connection with decision to abolish plaintiff's position when statement made three weeks after employment decision and did not in any way indicate that it was connected to decision). In addition, we note another difference between these cases and the instant appeal—*Ewers, Brennan,* and *Hadley* all involved statements made *after* the termination. It should have been clear to the defendants when they made statements about Andreu pending a decision regarding his employment that the statements were made in the course of his dismissal.

Finally, the defendants argue that even if the statements meet the first two requirements, it was not clearly established that Andreu was entitled to the hearing he requested. The defendants contend that Andreu was not entitled to a name clearing hearing because he was exonerated of the charges. The defendants cite *Seeley v. Board of Com'rs,* 654 F.Supp. 1309, 1312 (D.Col.1987). In *Seeley,* a deputy sheriff was fired after he was bound over for trial on criminal charges. After his acquittal,

he brought a complaint alleging that the sheriff who fired him violated a constitutionally protected liberty interest. The district court dismissed the claim because the statement made by the sheriff merely stated that the defendant had been bound over for trial. *Id.* In addition, the court noted that the plaintiff had received his opportunity to respond during his criminal trial. Even if we were to accept the holding of *Seeley,* we do not think this case presents a similar situation. Unlike the plaintiff in *Seeley,* Andreu did not receive a trial where he could refute the charges. It is common knowledge that charges are dropped for reasons that have little to do with guilt or innocence, *e.g.,* absence of believable witnesses or crowded court dockets. Moreover, the prosecutor's actions in dropping charges are particularly insufficient in a case such as this one when the stigmatizing statements occur *after* the prosecutor drops the charges and *before* the discharge decision is made. The effect of the defendants' actions was to convey the message that Andreu was being considered for discharge despite the dismissal because the defendants thought he was guilty. Thus, while the defendants in *Brennan* were "extremely circumspect in what they said at or near the time of Brennan's departure," 888 F.2d at 196, and the defendant in *Seeley,* merely stated that he was following department policy of discharging employees who were bound over for trial, 654 F.Supp. at 1312, the defendants in this case stated that they were considering plaintiff's discharge despite the refusal of the prosecutor to go forward with the charges *because they believed that the defendant concealed his involvement and committed a crime.* Under these circumstances, the plaintiff was entitled to a hearing to allow him an opportunity to rebut the charges.

In 1980 the *Owen* Court noted:

*Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971), held that "[w]here a person's good name, reputation, honor, or integri-

ty is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." In *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972), we explained that the dismissal of a government employee accompanied by a "charge against him that might seriously damage his standing and associations in his community" would qualify as something "the government is doing to him," so as to trigger the due process right to a hearing at which the employee could refute the charges and publicly clear his name. In the present case, the city—through the unanimous resolution of the City Council—released to the public an allegedly false statement impugning petitioner's honesty and integrity. Petitioner was discharged the next day. The Council's accusations received extensive coverage in the press, and even if they did not in point of fact "cause" petitioner's discharge, the defamatory and stigmatizing charges certainly "occur[red] in the course of the termination of employment." ... Under these circumstances, we have no doubt that ... the city's actions deprived petitioner of liberty without due process of law.

445 U.S. at 633 n. 13, 100 S.Ct. at 1406-07 n. 13. We hold that the district court correctly denied the defendants' motion to dismiss this claim on the basis of qualified immunity.

The judgment of the district court is AFFIRMED.