NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

| | | |
|---|---|---|
| SUK C. KIM, | ) | |
| | ) | |
| Appellant/Cross-Appellee, | ) | |
| | ) | |
| v. | ) | Case No. 2D16-4063 |
| | ) | |
| JUNG HYUN CHANG, | ) | |
| | ) | |
| Appellee/Cross-Appellant. | ) | |
| | ) | |

Opinion filed June 27, 2018.

Appeal from the Circuit Court for
Hillsborough County; William P. Levens,
Senior Judge and Robert A. Foster, Jr.,
Judge.

Laura H. Howard and Mark S. Howard of
Mark S. Howard, P.A., Tampa (withdrew
after briefing); Daniel A. Nicholas of
Litchfield Cavo LLP, Tampa (substituted
as counsel of record), for Appellant/Cross-
Appellee.

Brian P. Rush of Woodlief & Rush, P.A.,
Tampa, for Appellee/Cross-Appellant.

SALARIO, Judge.

Suk Kim appeals from a final judgment that, among other things, awarded

Jung Chang $15,000 on a counterclaim for battery and $165,000 on a counterclaim for

intentional infliction of emotional distress. Ms. Chang cross-appeals the same judgment

insofar as it denied her both a recovery on a counterclaim for breach of an oral loan agreement with Mr. Kim and an award of punitive damages. Because Ms. Chang failed to introduce legally sufficient evidence that she suffered severe emotional distress, we reverse the judgment entered against Mr. Kim on the intentional infliction counterclaim. As to Mr. Kim's appeal on the battery counterclaim and Ms. Chang's cross-appeal, we affirm the judgment without comment.

## I.

## A.

The evidence taken in the light most favorable to the judgment reflects the following. Born in South Korea, Ms. Chang moved to the United States in 1999. Her sister, Sook Chang, was married to Mr. Kim and lived in Tampa. Mr. Kim and Sook Chang had a grocery store on Hillsborough Avenue. Ms. Chang and her son moved in with Mr. Kim and Sook Chang, and Ms. Chang worked at the store. Mr. Kim and Sook Chang adopted Ms. Chang's son so that he could remain in the United States legally.

In 2001, Ms. Chang agreed to lend Mr. Kim money for repairs and improvements to the grocery store. Like many deals between family members, this one was not clearly spelled out. For example, Mr. Kim and Ms. Chang did not agree on a specific interest rate or time for repayment but seem to have understood that interest would accrue at the "commercial bank rate" and that Mr. Kim planned to repay the loan when he obtained a new loan from an actual bank. All in all, Ms. Chang advanced $164,050 to Mr. Kim, which came from the proceeds of a life insurance policy that were paid to Ms. Chang when her husband died. There is no question that Mr. Kim used the money to make improvements to his store.

In February 2002, Mr. Kim got a bank loan from the Bank of Tampa. Ms. Chang did not then demand repayment of the loan. This may have been because Ms. Chang was concerned about making demands of Mr. Kim before she had become a legal permanent resident of the United States. In September 2007, Ms. Chang asked Mr. Kim why he had not repaid the loan and whether he then had the money to repay it with interest. Ms. Chang says that as a result, she and Mr. Kim orally agreed to extend the due date of the note; Mr. Kim denies it.

In 2008, Ms. Chang tried to get Mr. Kim to repay the loan, which he declined to do. In addition, Ms. Chang says that while she was working in the kitchen at Mr. Kim's home, Mr. Kim approached her, "groped her," and pressed his body against hers. Two months later, Ms. Chang and her son moved out of Mr. Kim's home and into an apartment. Mr. Kim cosigned the papers necessary for her to get the apartment and gave her furniture for it. In 2009, Ms. Chang, Mr. Kim, and Sook Chang entered into a contract whereby Mr. Kim and Sook Chang bought a home that Ms. Chang and her son moved into and gave Ms. Chang the option to buy the property before 2012.

In May 2012, after an extended visit to South Korea, Ms. Chang moved back in with Mr. Kim and Sook Chang. Shortly thereafter, Ms. Chang and Mr. Kim had an argument. Ms. Chang demanded that Mr. Kim pay back the $164,050. Tempers flared. Mr. Kim said he would never pay Ms. Chang back. Mr. Kim pushed Ms. Chang down three stairs and when she attempted to get up pushed her down again. Mr. Kim called the police to evict her without giving her time to collect her belongings. He told the police that Ms. Chang should be arrested and deported to Korea. Ms. Chang suffered pain and a bruise to her leg. Shortly thereafter, Sook Chang sought a divorce

from Mr. Kim and both Ms. Chang and Sook Chang filed for injunctions against domestic violence. This litigation swiftly followed.

B.

In November 2012, Mr. Kim filed a seven-count complaint against Ms. Chang for declaratory relief and money damages on various theories. The nub of his complaint was that Ms. Chang falsely stated that Mr. Kim was indebted to her, that Ms. Chang's allegations in her petition for an injunction against domestic violence—which at that point had been dismissed for insufficient evidence—were false, and that Ms. Chang had converted funds from and attempted to embezzle Mr. Kim. Ms. Chang responded with eleven counterclaims against Mr. Kim and Sook Chang. As amended, nine counterclaims sought monetary relief on contract, tort, and equitable theories related to the loan from Ms. Chang to Mr. Kim and were asserted against both Mr. Kim and Sook Chang. The remaining two were for battery and intentional infliction of emotional distress, each arising out of the May 2012 incident in which Mr. Kim pushed Ms. Chang down the stairs and lodged only against Mr. Kim.

The case was later tried to a jury on Ms. Chang's counterclaims for breach of an oral loan agreement and unjust enrichment (both based on the loan from Ms. Chang to Mr. Kim) and battery and intentional infliction of emotional distress (both based on the May 2012 incident).[1] The trial was almost entirely focused on Ms. Chang's claims related to the loan. The parties disputed whether a loan agreement existed, what its terms were, what the interest rate was, whether the loan had been

_____

[1]Mr. Kim voluntarily dismissed his affirmative claims prior to trial. Mr. Kim and Sook Chang asserted crossclaims for contribution against one another which were also resolved at the trial, but those crossclaims are not relevant to this appeal.

modified, what the damages were, whether any action based on the loan was barred by the statute of limitations, and whether Mr. Kim was estopped from asserting the statute of limitations as a defense to Ms. Chang's loan-based claims.  Depending on the legal theory, the recovery on those claims was argued to the jury to be as much as $900,000 or more.  The claims for battery and intentional infliction were only a small part of the evidence presented during a six-day trial—much of the testimony had to be translated from Korean to English—and were not argued by Ms. Chang in either her opening statement or closing argument to the jury, except very briefly in a reply to a defense argument on whether Mr. Kim's May 2012 conduct was outrageous.

The jury returned a verdict in Mr. Kim's favor on Ms. Chang's claims for breach of an oral loan agreement and unjust enrichment.  In answers to special interrogatories, the jury found that there was an oral agreement between Ms. Chang and Mr. Kim pursuant to which she loaned him $164,050 but that Ms. Chang's claims for breach and unjust enrichment based on that loan were barred by the statute of limitations.  The jury returned a verdict in Ms. Chang's favor on the claims for battery and intentional infliction of emotional distress, awarding Ms. Chang $15,000 on the battery claim and $165,000 on the intentional infliction claim.  The $150,000 difference between the damage award on the claim for battery and the damage award on the claim for intentional infliction is one of the puzzles of this case.  Each claim arose from the same incident, and the jury was instructed that emotional distress was a compensable component of damages for each claim.  Yet the awards were wildly divergent.

II.

Mr. Kim argues that the trial court erred by denying his motion for directed verdict on Ms. Chang's counterclaim for intentional infliction of emotional distress.[2] In particular, he asserts that the evidence was insufficient to prove both that his conduct was "outrageous" and that Ms. Chang suffered "severe emotional distress" as required by the elements of the tort of intentional infliction. Assuming for argument's sake that Ms. Chang sufficiently proved outrageous conduct, we hold that she failed to present sufficient evidence that she suffered severe emotional distress.

A trial court's decision on a motion for directed verdict presents a question of law—the sufficiency of a party's evidence—that we review de novo. Fell v. Carlin, 6 So. 3d 119, 120 (Fla. 2d DCA 2009). The law here is settled:

> A motion for directed verdict should be granted only where no view of the evidence, or inferences made therefrom, could support a verdict for the nonmoving party. In considering a motion for directed verdict, the court must evaluate the testimony in the light most favorable to the nonmoving party and every reasonable inference deduced from the evidence must be indulged in favor of the nonmoving party. If there are conflicts in the evidence or different reasonable inferences that may be drawn from the evidence, the issue is factual and should be submitted to the jury.

Sims v. Cristinzio, 898 So. 2d 1004, 1005 (Fla. 2d DCA 2005) (citations omitted). We now apply that standard to the intentional infliction claim at hand.

Our supreme court first recognized the tort of intentional infliction of emotional distress in 1985 and, in so doing, adopted section 46 of the Restatement

---

[2]Mr. Kim also argues that the trial court erred by denying his motion for a remittitur of the damages on that counterclaim. Because we reverse as to liability, it is unnecessary for us to reach that argument.

(Second) of Torts (Am. Law Inst. 1965) to define the cause of action.  Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277, 278-79 (Fla. 1985); see also E. Airlines, Inc. v. King, 557 So. 2d 574, 575 (Fla. 1990) ("In McCarson we approved the adoption of section 46, Restatement (Second) of Torts . . . .").  Section 46 states that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."  Restatement (Second) of Torts § 46 (Am. Law Inst. 1965).  Breaking that statement into its parts, we have held that the elements of intentional infliction are (1) intentional or reckless conduct (2) that is "outrageous" in that it is "beyond all bounds of decency" and "utterly intolerable in a civilized community" (3) and that causes the victim emotional distress (4) that is "severe."  Winter Haven Hosp., Inc. v. Liles, 148 So. 3d 507, 515 (Fla. 2d DCA 2014); see also Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 594 (Fla. 2d DCA 2007).

This case concerns the third and fourth elements, which require that the defendant's conduct has caused the plaintiff severe emotional distress.  Unlike the element of outrageousness, which has been discussed and refined in a substantial number of appellate decisions, the requirements of causation and severity are not well developed in our state's law.  It seems appropriate, however, to begin with understanding what severe emotional distress is because that ultimately is what the defendant's conduct must cause.  On that point, the little authority we have points to the conclusion that "severe emotional distress means emotional distress of such a substantial quality or enduring quality[] that no reasonable person in a civilized society should be expected to endure it."  Kraeer Funeral Homes, Inc. v. Noble, 521 So. 2d 324, 325 (Fla. 4th DCA 1988) (affirming judgment on jury verdict based on instructions

containing this language); see also Fla. Std. Jury Instr. (Civ.) 410.5 ("Emotional distress is severe when it is of such intensity or duration that no ordinary person should be expected to endure it.").  This definition of severe emotional distress parallels the commentary to Restatement section 46—the section adopted by the supreme court—which contemplates that the element of severe emotional distress involves distress that "is so severe that no reasonable man could be expected to endure it" and that "[t]he intensity and the duration of the distress are factors to be considered in determining its severity."  Restatement (Second) of Torts § 46 cmt. j (Am. Law Inst. 1965).

Requiring that the character of the distress suffered by a plaintiff claiming intentional infliction be so severe that a reasonable person could not be expected to endure it comports with the nature of that tort.  The cause of action permits recovery for purely emotional injury without necessity of physical impact or manifestation.  See R.J. v. Humana of Fla., Inc., 652 So. 2d 360, 363 (Fla. 1995) ("We expressly recognized the tort of intentional infliction of emotional distress under which emotional distress is recoverable even if no physical impact is present." (emphasis omitted)).  The fact remains, however, that significant feelings of fright, shame, worry, and humiliation—and others besides—occasioned by the acts of others are, even if regrettable, an unavoidable part of living in society.  They are experienced by all of us.  Thus, courts that have tackled this issue have recognized that a high standard for determining what kind of emotional distress is remediable in a claim for intentional infliction is necessary to prevent the tort from becoming a venue for litigation over every emotional injury.  See, e.g., Rogers v. Louisville Land Co., 367 S.W.3d 196, 209 (Tenn. 2012) ("[S]ome degree of emotional disturbance, even significant disturbance, is part of the price of living in a complex and interactive society." (quoting Restatement (Third) of Torts § 45

cmt. i (Am. Law Inst., Tentative Draft No. 5, 2007))); Waddle v. Sparks, 414 S.E.2d 22, 27 (N.C. 1992) (finding "[s]upport for a high standard of proof on the severe emotional distress element" founded on similar concerns). And it is for exactly these reasons that the commentary to Restatement section 46 contemplates that recovery for the intentional infliction of emotional distress is permitted only where the emotional distress inflicted is so severe that no reasonable person could be expected to endure it. See Waddle, 414 S.E.2d at 27-28 ("Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people." (quoting Restatement (Second) of Torts § 46 cmt. j (Am. Law Inst. 1965))).

Having determined what severe emotional distress is, we must consider it alongside the element of causation. Taken together, the elements of causation and severe emotional distress require that a factfinder answer both a subjective question and an objective question. The subjective question is whether the plaintiff in fact suffered emotional distress as a consequence of whatever the defendant did. Cf. Alderwoods Grp., Inc. v. Garcia, 119 So. 3d 497, 506 (Fla. 3d DCA 2013) (holding that the question of whether a defendant's conduct caused severe emotional distress was not amenable to class action treatment because it involves "highly individualized determinations which cannot be established through common proof"). As explained above, the objective question is whether the emotional distress the plaintiff suffered was so intense or so long-lasting that no reasonable person should be expected to endure it. See Fla. Std. Jury Instr. (Civ.) 410.5. Thus, to prove a claim of intentional infliction at trial, the plaintiff's evidence must sufficiently establish both the existence of emotional distress and the quality of that emotional distress such that a factfinder may reasonably

infer both that the distress in fact happened and that the quality of that distress was too much for a reasonable person to be expected to bear.

Ms. Chang's trial evidence was insufficient to establish the quality of the distress she claims to have suffered. Although she testified at length at the trial, Ms. Chang was never asked and never said how Mr. Kim's conduct made her feel, how long the incident affected her, whether the incident left her emotionally unable to do or enjoy things she had done or enjoyed before, whether she had any psychological or physiological problems or symptoms (anxiety, depression, stress, etc.) as a result of what Mr. Kim did, whether she sought professional help, or anything else that might have enabled a jury to make a reasonable inference that Ms. Chang's claimed emotional distress was severe in the sense the law requires. There was no testimony from any fact witness as to what Ms. Chang said or did or how Ms. Chang behaved after the incident from which the jury could have drawn such an inference. Nor was there any expert testimony from which a jury could have found that Ms. Chang suffered distress so intense that no reasonable person could be expected to endure it.

None of that should be understood as a holding as to whether any particular type of evidence or any particular type of mental suffering is necessary to prove severe emotional distress—a matter about which other courts have expressed varying opinions. Compare, e.g., Peterson v. City of Plymouth, 945 F.2d 1416, 1421 (8th Cir. 1991) (holding that allegations of "illness, sleeplessness, humiliation, anxiety, mental anguish, and loss of reputation" were insufficient under Minnesota law, which construes the severity requirement "very restrictively"), with Haverbush v. Powelson, 551 N.W.2d 206, 235-36 (Mich. Ct. App. 1996) (affirming judgment on intentional infliction claim where the plaintiff testified that he was fearful, concerned that the

defendant would interfere with his wedding, and worried about his reputation and that the defendant's conduct affected the way he did his work). We do not need to express an opinion on that to decide this case. Here, there was no evidence at all to enable a jury to assess the quality of the emotional distress Ms. Chang claims to have suffered. Because the trial evidence was insufficient to permit the jury to make that assessment, it could not have reasonably inferred that any emotional distress Ms. Chang experienced was so intense or enduring that no reasonable person should be expected to bear it. See, e.g., Pizzimenti v. Oldcastle Glass, Inc., 666 F. Supp. 2d 839, 848 (N.D. Ohio 2009) (granting summary judgment where, among other things, the record contained no evidence other than a conclusory assertion of "significant stress" to show severe emotional distress); Rogers, 367 S.W.3d at 211 (finding evidence insufficient to prove severe emotional distress where the plaintiff produced "no evidence, by her own testimony or of anyone else, that she suffered physiological or psychological symptoms, sought medical or professional treatment, or incurred any significant impairment in her daily functioning resulting from the defendants' conduct"). That could be because this case was not really tried as a tort case. It was tried as a case for breach of an oral loan contract and for unjust enrichment.[3]

_____

[3]As a case in point, Ms. Chang argues on appeal that her testimony that Mr. Kim groped and leaned on her in 2008 establishes that she was susceptible to severe emotional distress in 2012 and that Mr. Kim knew it. But the testimony on this issue was so fleeting—because both the defense and the trial court immediately raised concerns about its relevance—that no judgment can be made about how severe that conduct was or whether and to what extent it affected Ms. Chang's emotional state four years later. In fact, Ms. Chang did not argue at trial that her testimony about the 2008 incident was relevant at all to the claim of intentional infliction. Both in response to the court's questions about relevance and in her closing argument to the jury, Ms. Chang argued only that the testimony related to her claim for breach of a loan agreement—in particular, that it undermined Mr. Kim's statute of limitations defense because it showed, contrary to Mr. Kim's theory, that Ms. Chang did not leave the house in 2008 because

Ms. Chang's principal argument is not that there was testimony or evidence that bore specifically on her emotional state but rather that Mr. Kim's conduct itself is sufficient to create a jury question on the element of severe emotional distress. Stripped to essentials, the argument is that Mr. Kim's battering a sixty-four-year-old woman after he refused to pay a loan she made to him years prior and then calling the police to have her removed was so awful that a jury could reasonably infer both that Ms. Chang suffered emotional distress and that the distress was of an intensity or duration that no reasonable person should endure.

To be sure, the outrageous nature of the defendant's conduct is relevant evidence in determining whether the defendant caused the plaintiff severe emotional distress. See Restatement (Second) of Torts § 46 cmt. j (Am. Law Inst. 1965) ("Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed."). But saying that the defendant's conduct is relevant to the elements of causation and severity is not the same as saying that it is legally sufficient to prove them. "Outrageous" conduct that is "atrocious, and utterly intolerable in a civilized community" is an element of intentional infliction; so awful conduct is necessarily at issue in every such case. Matsumoto v. Am. Burial & Cremation Servs., Inc., 949 So. 2d 1054, 1056 (Fla. 2d DCA 2006) (quoting Ponton v. Scarfone, 468 So. 2d 1009, 1011 (Fla. 2d DCA 1985)). But just about any conduct that qualifies as "outrageous," "atrocious," and

Mr. Kim had refused a demand for repayment but rather because he had groped her. Further, although Ms. Chang could have requested a special jury instruction that might have allowed her to argue Mr. Kim's special knowledge of her emotional distress based on the 2008 incident, which is suggested by the notes to the standard instruction on severe emotional distress, our record does not reflect that she either asked for or received such an instruction.

"utterly intolerable in a civilized community" would seem to be capable of producing severe emotional distress in a person subjected to it. To hold that the outrageousness of the defendant's conduct standing alone is sufficient to prove both causation and severity as to a particular plaintiff is to have the separate and important elements of causation and severity gobbled up by the element of outrageousness. Here, for example, the evidence concerning Mr. Kim's conduct may warrant a reasonable inference that it was of a type that could cause severe emotional distress to some people, but without any evidence bearing on the actual effect of that conduct on Ms. Chang's emotional state in particular, one cannot reasonably say that she in particular suffered such distress. Cf. Ford Motor Credit Co. v. Sheehan, 373 So. 2d 956, 959 (Fla. 1st DCA 1979) (holding that evidence of the outrageousness of the defendant's conduct taken together with the plaintiff's testimony concerning his emotional state was sufficient to submit an intentional infliction case to a jury). But see Kloepfel v. Bokor, 66 P.3d 630, 635 (Wash. 2003) (en banc) (stating that severe distress can be "presumed" once intentional conduct and outrageousness are proved). Handing this case to a jury on the issues of causation and severity based solely on the awfulness of Mr. Kim's conduct did nothing but grant it a license to speculate that the conduct caused Ms. Chang severe emotional injury. Jury speculation is not a permissible basis for a civil judgment. See Shartz v. Miulli, 127 So. 3d 613, 620-21 (Fla. 2d DCA 2013) (holding, in a medical malpractice case, that the trial court should have granted a directed verdict where, on the plaintiff's evidence, "[t]he jury was necessarily left to speculate" about causation); Wilson v. Winn-Dixie Stores, Inc., 559 So. 2d 263, 264 (Fla. 2d DCA 1990) (affirming judgment notwithstanding the verdict where the plaintiffs' evidence left the jury to "speculate that appellee should have known of a dangerous condition").

Because the evidence was not legally sufficient to prove that Mr. Kim's conduct caused Ms. Chang to suffer severe emotional distress, the trial court should have granted Mr. Kim's motion for directed verdict on that counterclaim.

III.

For the foregoing reasons, we reverse the judgment on Ms. Chang's counterclaim for intentional infliction of emotional distress and remand for entry of an amended judgment in Mr. Kim's favor on that claim.  We affirm the judgment in all other respects.

Affirmed in part; reversed in part; remanded with instructions.


KHOUZAM and ROTHSTEIN-YOUAKIM, JJ., Concur.