[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11297
_____

D.C. Docket No. 4:18-cv-00329-RH-CAS

MARION P. HAMMER,

Plaintiff - Appellant,

versus

LAWRENCE T. SORENSEN,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(August 11, 2020)

Before WILLIAM PRYOR, Chief Judge, ROSENBAUM, Circuit Judge, and
MOORE,[*] District Judge.

PER CURIAM:

_____

[*] Honorable K. Michael Moore, Chief United States District Judge for the Southern District
of Florida, sitting by designation.

Plaintiff-Appellant Marion Hammer, a well-known lobbyist for the National Rifle Association, appeals the dismissal of her claims against Defendant-Appellee Lawrence "Lol" Sorensen.  Sorensen twice emailed Hammer at her publicly listed email address, taking issue with a cause for which Hammer has lobbied.  In his two emails, along with messages indicating his disagreement with Hammer's position on assault rifles, Sorensen included a total of four graphic photographs showing wounds inflicted by such weapons.  Hammer sued, alleging several torts.  After careful consideration, and with the benefit of oral argument, we now conclude that the district court correctly granted Sorensen's motion to dismiss for failure to state a claim.

## I.

This case requires us to review an order granting a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P.  For purposes of reviewing the order dismissing the case, we set forth and discuss the allegations in Plaintiff-Appellant Marion Hammer's complaint as though they are true, viewing them in the light most favorable to Hammer.  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) (citation and quotation marks omitted).  They may or may not be the actual facts.

In 1995, Hammer became the National Rifle Association of America's ("NRA") first woman president.  When she filed her complaint in this case, Hammer,

2

who lived in Florida, served as the NRA's Florida lobbyist. Hammer has described herself as "considered by many to be the most influential Second Amendment state lobbyist in the United States."

As a lobbyist, Hammer held membership in the Florida Association of Professional Lobbyists at the time she filed her complaint. On that organization's public website, Hammer identified herself under "Professional Information" as affiliated with the NRA and the Unified Sportsmen of Florida. She also listed her email address and identified her lobbying status as "active."

Defendant-Appellee Lawrence "Lol" Sorensen was an attorney-mediator who provided alternative-dispute-resolution services and lives in California. In the aftermath of the tragic shooting that occurred at Marjory Stoneman Douglas High School, Sorensen obtained Hammer's lobbyist email address and, on March 24, 2018, sent Hammer two unsolicited emails to that address. In both emails, Sorensen listed his contact information, website, and his basic job description.

The first email was titled "Assault Rifle Support Results" and read, "Dear Ms. Hammer, Thought you should see a few photos of handiwork of the assault rifles you support." Embedded within the email message were three extremely graphic photographs of large, gaping wounds to what appear to be a person's leg.

Thirty-one minutes later, Sorensen sent a second email to Hammer's listed lobbyist email address. This one was titled, "One more instructive photo." It stated,

3

"Dear Marion, This photo documents the effect of an outdated military rifle on JFK. Today's assault rifles are far more destructive."  Included with the message was another very graphic photograph—this time of the injury to what appears to be President Kennedy's head, after he was shot, as he laid on a table.

In response, Hammer filed this diversity action[1] against Sorensen.[2]  In her complaint, Hammer made six claims.  Count I alleged that Sorensen had engaged in cyberstalking, in violation of Fla. Stat. § 784.048, and sought to enjoin him from further activity under Fla. Stat. § 784.0485.  In Count II, Hammer sought injunctive relief against Sorensen for alleged harassment, in violation of Fla. Stat. § 748.048. Counts III and IV claimed intentional infliction of emotional distress under Florida law and sought an injunction and damages, respectively.  In Counts V and VI, Hammer asserted that Sorensen had intruded upon her seclusion, in violation of Florida law, and sought an injunction and damages, respectively.

Sorensen moved under Rule 12(b)(6), Fed. R. Civ. P., to dismiss the case for failure to state a claim.[3]  The district court granted Sorensen's motion, concluding

---

[1] To qualify for diversity jurisdiction under 28 U.S.C. § 1332, the amount in controversy must exceed $75,000, and no plaintiff must share a state of citizenship with any defendant.

[2] Hammer also filed her complaint in this case against other defendants who had separately made other communications to her.  None of those defendants' claims are before us here, so we do not discuss them further.

[3] He also moved under Rule 12(b)(1), Fed. R. Civ. P., to dismiss the case for lack of subject-matter jurisdiction.  The district court implicitly found subject-matter jurisdiction when it dismissed the case for failure to state a claim.  We agree that the district court had subject-matter jurisdiction.  We also conclude that we enjoy subject-matter jurisdiction on appeal. *See* 28 U.S.C.

that Sorensen's emails "were germane to the policy debate that Ms. Hammer regularly participated in and Mr. Sorensen apparently sought to join." For that reason, the court explained, the emails were not tortious and all of Sorensen's speech was protected by the First Amendment. Hammer now appeals.

## II.

We engage in *de novo* review of a district court's order granting a motion to dismiss a complaint for failure to state a claim. *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir.), *cert. denied*, 139 S. Ct. 2678 (2019). When we do so, we take the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Id.* A complaint survives a motion to dismiss if it includes enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). We may affirm a district court's decision on any basis in the record, even if the district court did not, in fact, rely on that basis in dismissing the case. *Henley v. Payne*, 945 F.3d 1320, 1333 (11th Cir. 2019).

---

§ 1291. For that reason and because no party asserts on appeal that subject-matter jurisdiction has been lacking at any stage of the proceedings, we do not address the matter further.

**III.**

As we have noted, Hammer's complaint alleges claims under state law.  The First Amendment becomes relevant, if at all, only if Hammer has alleged sufficient facts to satisfy each of the elements of her state-law claims.

It is well established that "federal courts should avoid reaching constitutional questions if there are other grounds upon which a case can be decided."  *BellSouth Telecomms., Inc. v. Town of Palm Beach*, 252 F.3d 1169, 1176 (11th Cir. 2001) (citation and quotation marks omitted).  For that reason, we begin by evaluating whether Hammer's complaint alleges enough facts to set forth each of her state-law claims.  As we explain below, we conclude that it does not.  So we do not reach the First Amendment issues.

A. <u>The complaint fails to sufficiently allege cyberstalking under Fla. Stat. § 784.048</u>

Under Fla. Stat. § 748.0485, a court may issue an injunction against cyberstalking.  Section 784.048(1)(d), Fla. Stat., in turn, defines "cyberstalking" as follows:

> 1. . . . engag[ing] in a course of conduct to communicate, or . . . caus[ing] to be communicated, words, images, or language by or through the use of electronic mail or electronic communication, directed at a specific person; or
>
> 2. . . . access[ing], or attempt[ing] to access, the online accounts or Internet-connected home electronic systems of another person without that person's permission,

6

causing substantial emotional distress to that person and serving no legitimate purpose.

Based on this definition, a litigant seeking an injunction for cyberstalking must show, among other elements, that the communications in question "serv[ed] no legitimate purpose." Florida courts have explained that we "broadly construe[]" the inquiry into "legitimate purpose," and that the term "cover[s] a wide variety of conduct." *David v. Textor*, 189 So. 3d 871, 875 (Fla. Dist. Ct. App. 2016). For example, Florida courts have found a "legitimate purpose" in communications demanding that the recipient drop his lawsuit or he would be "sorry," *id.*; a parent's telephone call complaining about a dance-team's decision concerning his daughter's participation on the dance team, *Goudy v. Duquette*, 112 So. 3d 716, 717 (Fla. Dist. Ct. App. 2013); and a loan maker's text messages seeking repayment of a loan—even though the texts also threatened that the loan maker would tell the recipient's wife about the recipient's affair if the recipient did not pay back the loan, *Alter v. Paquette*, 98 So. 3d 218, 220 (Fla. Dist. Ct. App. 2012). As these examples convey, Florida courts "have generally held that contact is legitimate when there is a reason for the contact other than to harass the victim," *O'Neill v. Goodwin*, 195 So. 3d 411, 413 (Fla. Dist. Ct. App. 2016)—even if the victim may find the communication disturbing.

We have no difficulty finding that Sorensen's two emails served a "legitimate purpose" as Florida sweepingly defines the term. Sorensen sent the two emails to

7

Hammer's email address that she publicly listed in her capacity as a lobbyist for the NRA. And according to Hammer, she was "considered by many to be the most influential Second Amendment state lobbyist in the United States."

Sorensen's emails pertained directly to subject matter about which Hammer lobbied, and they appear to have been clearly intended to dissuade Hammer from continuing to support the availability of assault rifles. For instance, Sorensen titled his first email "[a]ssault [r]ifle [s]upport [r]esults," addressing his communication directly to what he viewed as the "results" of Hammer's lobbying efforts as they pertained to assault rifles. He then referred again to Hammer's lobbying work in the body of that email, stating, "Thought you should see a few photos of handiwork of the assault rifles you support." Similarly, the second email described itself as containing "[o]ne more instructive photo" and then explained that "[t]oday's assault rifles are far more destructive" than the one that was used to kill President Kennedy.

No doubt the embedded photographs substantially turned up the volume on Sorensen's message, but they did not negate his communications' "legitimate purpose," as Florida law broadly construes that term, of trying to persuade Hammer that she should not continue to support the availability of assault rifles. Because Hammer cannot show that Sorensen's emails served "no legitimate purpose," she cannot prevail on her cyberstalking claim. This is true even if Hammer was startled, distressed, or disturbed by the receipt of Sorensen's emails.

8

B. The complaint fails to sufficiently allege harassment under Fla. Stat. § 748.084

Hammer's claim for harassment under Fla. Stat. § 784.084 runs into the same problem as her claim for cyberstalking. That statute defines the term "[h]arass" to mean "to engage in a course of conduct directed at a specific person which causes substantial emotional distress to that person and serves no legitimate purpose." Fla. Stat. § 784.084(1)(a).

For the same reasons we cannot find under Florida's definition of "cyberstalking" that Sorensen's communications served no "legitimate purpose," we cannot reach that conclusion under Florida's anti-harassment statute. Florida courts apply the same meaning for "legitimate purpose" under both Florida's anti-harassment statute and its cyberstalking statute. *See O'Neill*, 195 So. 3d at 413 (relying on another case's discussion of the term in relation to cyberstalking to define it as it pertains to the anti-harassment statute). Without establishing that Sorensen's emails served no "legitimate purpose," Hammer cannot set forth a viable harassment claim under Florida law.

C. The complaint fails to sufficiently allege claims under Florida law for intentional infliction of emotional distress

To state a claim under Florida law for intentional infliction of emotional distress, a plaintiff must demonstrate "(1) intentional or reckless conduct (2) that is outrageous in that it is beyond all bounds of decency and utterly intolerable in a

civilized community (3) and that causes the victim emotional distress (4) that is severe." *Kim v. Jung Hyun Chang*, 249 So. 3d 1300, 1305 (Fla. Dist. Ct. App. 2018) (citations and internal quotation marks omitted). We focus first on the "outrageousness" element. Under that element, it is not enough "that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Williams v. City of Minneola*, 575 So. 2d 683, 691 (Fla. Dist. Ct. App. 1991) (citation and quotation marks omitted).

Here, Hammer has not alleged sufficient facts to meet the standard for "outrageous" behavior. Hammer does not contend that the words in Sorensen's emails constituted intentional infliction of emotional distress; rather, she relies on the photographs included in the emails. There is no doubt that the photographs are disturbing: they vividly show gruesome wounds. But we cannot say that they are "beyond all bounds of decency and utterly intolerable in a civilized community," particularly when considered in context. *Kim*, 249 So. 3d at 1305. Images that are at least as graphic, if not ghastly, appear in many publicly released movies and sometimes appear in news footage, albeit with warnings. And here, Sorensen presented the images as part of his attempt to engage with Hammer in a debate on the damage that assault weapons can inflict on human beings. Debates on matters

10

that are the subject of lobbying efforts are an aspect of living in a "civilized community." So whatever else may be said of the images Sorensen included in his emails, we cannot say they were "outrageous."

Hammer similarly cannot demonstrate that the images objectively would cause a reasonable person to experience the type of "severe" emotional distress required to make out a claim for intentional infliction of emotional distress. To qualify as "severe," emotional distress must be "of such a substantial quality or enduring quality that no reasonable person in a civilized society should be expected to endure it." *Id.* (citation, internal quotation marks, and alteration omitted). In evaluating the severity of an incident, "the intensity and the duration of the distress" are relevant factors. *Id.* (citation, quotation marks, and alteration omitted). The standard to satisfy "severity" is "high" to "prevent the tort from becoming a venue for litigation over every emotional injury." *Id.*

As we have noted, the photographs in the emails were hard to look at, but they were not "of such a substantial quality or enduring quality that no reasonable person in a civilized society should be expected to endure it." *Id.* (citation, internal quotation marks, and alteration omitted). Plus, because they consisted of a total of four photographic images in two email communications, Hammer was not required to be exposed to them for a lengthy period. Nothing prevented her from closing the

11

emails as quickly as she opened them.  For these reasons, Hammer's claim for intentional infliction of emotional distress necessarily fails.

D. <u>The complaint fails to sufficiently allege claims under Florida law for intrusion upon seclusion</u>

Under Florida law, the tort of intrusion upon seclusion is one of four torts falling under the broader heading of invasion of privacy.  *Agency for Health Care Admin. v. Associated Indus. of Fla., Inc.*, 678 So. 2d 1239, 1252 n.20 (Fla. 1996).  Although most claims under this cause of action involve publication to a third party of some matter considered private, the cause of action can nonetheless arise even when no publication occurs.  *Stoddard v. Wohlfahrt*, 573 So. 2d 1060, 1062 (Fla. Dist. Ct. App. 1991).

Florida District Courts of Appeal have referred to the Restatement (Second) of Torts's definition of intrusion upon seclusion in analyzing this tort.  *See Purrelli v. State Farm Fire and Cas. Co.*, 698 So. 2d 618, 620 (Fla. Dist. Ct. App. 1997); *see also Williams v. City of Minneola*, 575 So. 2d 683, 689 n.5 (Fla. Dist. Ct. App. 1991). The Restatement explains that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Restatement (Second) of Torts* § 652B (1977).  Nevertheless, the Supreme Court of Florida has construed the tort of intrusion upon seclusion even more narrowly than the Restatement provides.  *See*

12

*Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 161 n.3, 162 (Fla. 2003). It has required a plaintiff to show an intrusion into a private place and not merely a private activity. *See id.*

Hammer's allegations do not satisfy the elements of intrusion upon seclusion as the Florida Supreme Court has construed the elements of that cause of action.

The facts Hammer avers do not establish that Sorensen intruded physically into a "place" or "private quarter" of Hammer's where Hammer had a reasonable expectation of privacy, since Sorensen merely sent his two emails to the email address Hammer publicly lists in association with her lobbying activities for the NRA. To be clear, Hammer needed to plausibly allege an intentional intrusion into some private quarter. But Sorensen emailed the address Hammer publicly listed on the website for the Florida Association of Professional Lobbyists. And Hammer alleged no reason for Sorensen to have expected that this professional email address would have been associated with private quarters.

And finally, we do not agree that Sorensen's communications "would be highly offensive to a reasonable person," as Florida law construes that phrase. Florida law equates the "highly offensive to a reasonable person" element from the intrusion-upon-seclusion cause of action with the "outrageousness" element of the intentional-infliction-of-emotional-distress cause of action. *See Stoddard*, 573 So. 2d at 1062-63. So for the reasons we have already described in concluding that the

13

complaint did not sufficiently allege "outrageousness" in its intentional-infliction-of-emotional-distress claim, we likewise conclude that it failed to sufficiently allege that Sorensen's emails were "highly offensive to a reasonable person."

## IV.

For the foregoing reasons, we affirm the district court's dismissal of this case for failure to state a claim.

**AFFIRMED.**