[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-14106

_____

ANTHONY COLON,

                                       Plaintiff-Appellee,

*versus*

WENDELL SMITH,
Deputy, Badge No. 75438, in his individual
capacity,
RONALD RASLOWSKY,
Corporal, Badge No. 3535, in his individual
capacity,

                                    Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:21-cv-00256-CEM-EJK

_____

Before JILL PRYOR, BRANCH, and HULL, Circuit Judges.

HULL, Circuit Judge:

We grant in part and deny in part the petition for panel rehearing, vacate our prior opinion, and substitute the following opinion making some minor changes to Part IV.B.

★ ★ ★ ★

After responding to a 911 call of a verbal and physical fight inside an apartment, Corporal Ronald Raslowsky and Deputy Wendell Smith encountered Anthony Colon outside the location. An altercation between Colon and the officers followed, and Colon was arrested and ultimately charged with resisting an officer with violence. Colon's charges were later dismissed.

Colon then sued Raslowsky and Smith, raising claims (1) under 42 U.S.C. § 1983 for unreasonable seizure, false arrest, excessive force, and malicious prosecution; and (2) under Florida law for false imprisonment, battery, and intentional infliction of emotional distress ("IIED"). Raslowsky and Smith moved for summary judgment based on qualified immunity, and the district court denied the motions. This is the officers' appeal.

## I.    FACTS

When reviewing the grant or denial of qualified immunity at summary judgment, "[w]e resolve all issues of material fact in favor of the plaintiff, and then determine the legal question of whether the defendant is entitled to qualified immunity under that version of the facts." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1313 (11th Cir. 2017) (quotation marks omitted). "With the facts so construed, we have the plaintiff's best case." *Id.* at 1314 (quotation marks omitted).

A.    Initial Contact with Colon

On February 6, 2017, Corporal Raslowsky and Deputy Smith responded to a 911 call regarding a verbal and physical fight inside Unit 186 of an apartment complex. The caller indicated she heard two males engaged in a 20-minute physical fight, who stated they were going to kill each other.

When Corporal Raslowsky arrived, he saw Craig Jackson, Colon, and a third man walking together down the apartment complex's stairwell, and Raslowsky asked whether they lived in Unit 186. Jackson stated he lived in Unit 186. When asked about the 911 caller's description of a fight, Jackson stated he had been yelling into his cell phone. Corporal Raslowsky asked if the officers could search the apartment "to make sure nothing was wrong and that no one needed medical attention," but Jackson said no. Corporal Raslowsky then explained to Jackson that he was being detained while police investigated the 911 call, and the officers handcuffed Jackson for officer safety. During this interaction,

22-14106               Opinion of the Court                4

Colon stayed with Jackson, standing several feet away. The third man, having no apparent connection to Jackson or Colon, walked away.

B.      Colon's Cell Phone Video

As the officers handcuffed Jackson, Colon began recording the officers on his cell phone. On the cell phone video, Colon asked the officers why they were arresting Jackson. Corporal Raslowsky responded Jackson was not under arrest and was being detained for officer safety. Raslowsky then asked Colon whether he was in Jackson's apartment; Colon replied no, he was there to give Jackson a ride to work. Raslowsky then approached Colon to question him.

On the cell phone video, Corporal Raslowsky, now standing in front of Colon, stated Colon was interjecting himself into the investigation, and Raslowsky asked eight times whether Colon had identification. Instead of producing identification, Colon responded that he just arrived at the apartment to take Jackson to work, and Colon asked Raslowsky to step away. Raslowsky's hand is then seen reaching toward Colon's cell phone and the video ends.

In his police report, Corporal Raslowsky explained that because Colon walked down the stairwell with Jackson, Colon was a potential participant in the fight leading to the 911 call, and Raslowsky approached Colon to question him. At his deposition,

Colon testified he did not provide his identification because he felt threatened.

### C.    Disputed Altercation

After the cell phone video ends, an altercation occurred between Colon and the officers. The parties present conflicting accounts of this altercation.

The officers assert that after Colon refused to provide his identification, Corporal Raslowsky reached out his hand to handcuff Colon, but Colon pushed or "shoulder check[ed]" Raslowsky. Seeing this, Deputy Smith tackled Colon to the ground. While Colon and Smith were on the ground, Colon rolled on top of Smith, and Raslowsky tased Colon.

Colon presents a different account.[1] Colon testified that after Corporal Raslowsky asked for his identification, Raslowsky "got very frustrated" and lunged at him, which knocked his phone to the ground. As Colon reached down to pick up his phone, Deputy Smith tackled Colon to the ground, and Raslowsky tased Colon. Colon denied that he (1) pushed Raslowsky or (2) rolled on top of Smith when Smith and Colon were on the ground. As a result of the officers' force, Colon suffered lower back pain for a few weeks and his wrist was "lightly sprained."

---

[1] The officers assert that parts of Colon's deposition testimony were arguably inconsistent. Still, at this summary judgment stage, we must view the evidence in the light most favorable to Colon. *Stephens*, 852 F.3d at 1313.

There is a second video taken by a neighbor at the apartment complex. This video does little to clear up the facts of the altercation, as it begins the moment Corporal Raslowsky tased Colon and does not show the disputed altercation itself. In this second video, Smith and Colon can be seen on the ground, but at that time Colon is not on top of Smith. After being handcuffed, Colon can be heard on the video saying, "He started wrestling me out of nowhere, I didn't touch him. I asked him to step away from my face."

At this summary judgment stage, we must accept Colon's version of events as true. *See Stephens*, 852 F.3d at 1313-14. As a result, we are left with this key sequence of events: (1) Corporal Raslowsky approached Colon and asked eight times if Colon had identification; (2) frustrated with Colon's lack of response, Raslowsky lunged at Colon, but Colon did not push Raslowsky; (3) Deputy Smith then tackled Colon to the ground; (4) while on the ground, Colon did not roll on top of Smith; and (5) Raslowsky tased Colon.[2]

D.    Post Arrest

---

[2] The officers' police report states that, in a post-arrest phone call to his mother, Colon stated, "Mom you know that I feel disrespected when someone gets into my personal space, so I pushed him because he shouldn't have tried to take my phone." At his deposition, Colon testified that he did not make this comment and his conversation that day with his mother was in person while he was sitting in the police car at the scene and not by a phone call. Because Colon testified he never pushed Corporal Raslowsky, we must accept as true his version that he did not. *See Stephens*, 852 F.3d at 1313.

Colon testified that he was able to post bond after his arrest and spent 6 or 7 hours in jail. On May 18, 2017, Colon was charged by information with two counts of battery on a law enforcement officer, but both counts were dismissed. Colon appeared in court for one hearing before his criminal charges were dropped. As a result of his arrest, Colon testified that he (1) missed one day of work, totaling $105 in lost wages, (2) was told he might lose his job for missing work, but (3) did not actually lose his job.

## II.    PROCEDURAL HISTORY

Colon sued Corporal Raslowsky and Deputy Smith (1) under 42 U.S.C. § 1983 for unreasonable seizure, false arrest, excessive force, and malicious prosecution; and (2) under Florida law for false imprisonment, battery, and IIED.

The officers moved for summary judgment, raising qualified immunity as a defense to Colon's § 1983 law claims. The officers did not raise Florida law official immunity as a defense to Colon's state law claims, and on appeal they present no argument regarding such immunity.

The district court granted summary judgment in favor of Corporal Raslowsky on Colon's § 1983 unreasonable seizure claim, finding Raslowsky had reasonable suspicion to detain Colon. However, the district court denied summary judgment to the officers on Colon's remaining claims.

22-14106                Opinion of the Court                8

As to Colon's § 1983 false arrest claims against both officers, the district court found that the officers lacked arguable probable cause to arrest Colon.[3]

The district court then denied summary judgment on Colon's § 1983 excessive force claims and his state law battery and IIED claims. The court found it was disputed "who instigated the initial physical contact between Plaintiff and Raslowsky . . . and these facts are material to determining whether Defendants' subsequent use of force was appropriate."

The district court also denied summary judgment on Colon's § 1983 malicious prosecution claims and his state law false imprisonment claims. The court determined "[a]ll of these counts are premised upon the allegation that Defendants' arrest of Plaintiff was not supported by probable cause," which could not be resolved "because there are disputed issues of material fact"—*i.e.*, whether Colon or Corporal Raslowsky initiated physical contact.

The officers timely appealed.

---

[3] The district court construed Colon's "False Arrest and Unreasonable Seizure" claim against Deputy Smith as encompassing only Colon's arrest, not the prior detention/stop of Colon. On appeal, Colon does not challenge this determination.

### III.    SECTION 1983 CLAIMS

On appeal, the officers argue that the district court erred in denying them qualified immunity as to Colon's § 1983 claims for false arrest, excessive force, and malicious prosecution.

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007) (quotation marks omitted). If an official's challenged conduct was within the scope of his discretionary authority, the plaintiff must establish that the official is not entitled to qualified immunity by showing both (1) that the official's conduct violated a constitutional right, and (2) that the constitutional right was clearly established at the time of the official's conduct. *Roberts v. Spielman*, 643 F.3d 899, 904 (11th Cir. 2011).

Corporal Raslowsky and Deputy Smith were acting in their discretionary authority. The dispute is over whether they violated

22-14106               Opinion of the Court                10

Colon's constitutional rights under the Fourth Amendment or were entitled to qualified immunity.[4]

A.    False Arrest

On appeal, the officers argue they had both arguable reasonable suspicion to detain Colon in a *Terry*[5] stop and arguable probable cause to arrest him for obstruction without violence under Fla. Stat. § 843.02. In response, Colon asserts the officers unconstitutionally detained and arrested him.[6]

"[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). In the qualified immunity context, the question is not whether reasonable suspicion existed in fact, but whether the officer had arguable reasonable suspicion given the totality of the circumstances. *Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000). "Although a

---

[4] We have jurisdiction to review denials of qualified immunity on Colon's § 1983 claims against the officers. *See English v. City of Gainesville*, 75 F.4th 1151, 1155-56 (11th Cir. 2023).

[5] *Terry v. Ohio*, 392 U.S. 1 (1968).

[6] The district court granted qualified immunity and summary judgment to Corporal Raslowsky on Colon's § 1983 unreasonable seizure claim because it concluded Raslowsky had reasonable suspicion for a *Terry* stop of Colon. However, we lack jurisdiction to review a grant of qualified immunity. *Winfrey v. Sch. Bd. of Dade Cnty.*, 59 F.3d 155, 158 (11th Cir. 1995). Nonetheless, we must set forth the facts supporting reasonable suspicion as necessary to analyze Colon's § 1983 false arrest claims.

mere hunch does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Kansas v. Glover*, 589 U.S. 376, 380 (2020) (quotation marks omitted).

Here, several facts support arguable reasonable suspicion for a brief investigatory stop of Colon. The 911 caller stated two men in Unit 186 were engaged in a fight, and the combatants said they were going to kill each other. After Raslowsky arrived, he saw Jackson and Colon walking together down the apartment complex's stairs, and Jackson confirmed he lived in Unit 186. As Raslowsky and Smith questioned and handcuffed Jackson, Colon remained mere feet away and stated that he came to the apartment to give Jackson a ride to work.

"[G]iven the circumstances, [arguable] reasonable suspicion objectively existed to justify" a *Terry* stop of Colon to investigate whether he was involved in the fight leading to the 911 call. *See Hicks v. Moore*, 422 F.3d 1246, 1252 (11th Cir. 2005). Due to Colon's presence with and proximity to Jackson, his statement that he had been to Jackson's apartment, and the call's reference to two men, Corporal Raslowsky was not required to accept Colon's statement at face value and had leeway to determine Colon's identity at least. Because arguable reasonable suspicion existed, Raslowsky could detain Colon to ascertain Colon's identity. *See* Fla. Stat. § 901.151(2). As a result, Raslowsky was engaged in the lawful

execution of a legal duty when he stopped Colon and asked whether Colon had identification.

Next, we must determine whether Colon's failure, while lawfully detained, to provide his identification constituted obstructing or resisting an officer under Fla. Stat. § 843.02.

Section 843.02 provides "[w]hoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree." Fla. Stat. § 843.02. This statute has two elements: "(1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty." *C.E.L. v. State*, 24 So. 3d 1181, 1185-86 (Fla. 2009).

"Florida courts have generally held, with very limited exceptions, that physical conduct must accompany offensive words to support a conviction under § 843.02." *Davis v. Williams*, 451 F.3d 759, 765 (11th Cir. 2006). But "[w]ords alone may result in obstruction of justice where the officer in question is . . . legally detaining a person." *Id.* at 765 n.9 (quoting *Francis v. State*, 736 So. 2d 97, 99 n.2 (Fla. Dist. Ct. App. 1999)).

"When an officer lawfully conducts a *Terry* stop, Fla. Stat. § 843.02 authorizes the officer to arrest a person who refuses to provide identification in response to requests." *Moore v. Pederson*, 806 F.3d 1036, 1049 (11th Cir. 2015). *Compare K.A.C. v. State*, 707 So. 2d 1175, 1177 (Fla. Dist. Ct. App. 1998) (holding lawfully

detained truant juvenile resisted officers when he refused to identify himself and reveal where he went to school), *and N.H. v. State*, 890 So. 2d 514, 517 (Fla. Dist. Ct. App. 2005) (holding lawfully detained individual obstructed police by "refusing to identify himself, refusing to sit and thus comport himself so that the officers could investigate and finally physically threatening them"), *with M.M. v. State*, 51 So. 3d 614, 615-16 (Fla. Dist. Ct. App. 2011) (holding individual did not violate § 843.02 because "[a]t no time was M.M. under lawful detention" and "[t]hus he was free to refuse to identify himself to the officer").

Here, Corporal Raslowsky was engaged in a lawful *Terry* stop when he asked whether Colon had identification eight times. It is undisputed that Colon did not present his identification. Therefore, the officers had arguable probable cause to arrest Colon for resisting an officer without violence under Fla. Stat. § 843.02, and thus, Colon's § 1983 false arrest claims fail. *See Turner v. Williams*, 65 F.4th 564, 589 (11th Cir. 2023) (stating probable cause is an absolute bar to § 1983 false arrest claims).

Colon's arguments to the contrary are not persuasive. First, Colon argues that Raslowsky's failure to comply with Fla. Stat. § 901.17 renders his arrest illegal. That statute requires that unless a suspect "flees or forcibly resists," an officer must inform the suspect "of the officer's authority and the cause of arrest." Fla. Stat. § 901.17. However, "an officer's failure to comply with section 901.17 does not render the arrest illegal; it is merely a fact the jury can consider in the defendant's criminal case in evaluating the

reasonableness of the defendant's actions." *Fla. Fish & Wildlife Conservation Comm'n v. Jeffrey*, 178 So. 3d 460, 466-67 (Fla. Dist. Ct. App. 2015); *Albury v. State*, 910 So. 2d 930, 933 (Fla. Dist. Ct. App. 2005) (same).

Second, Colon contends he did not have sufficient time to provide Raslowsky with his identification. Colon's cell phone video clearly shows Raslowsky asking about identification eight times. A reasonable officer in Raslowsky's position could have believed Colon was resisting an officer without violence where Colon failed to present his identification after eight requests. *See Edger v. McCabe*, 84 F.4th 1230, 1236-37 (11th Cir. 2023) ("In the false arrest context, arguable probable cause exists where a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests." (quotation marks omitted)).

Third, at oral argument, Colon suggested that an individual obstructs an officer by refusing to provide identification *only after* the individual is arrested, not *prior to* arrest, such as when an individual is lawfully detained. The Florida Supreme Court has rejected this argument, stating "section 843.02 . . . does not require that the officer be attempting to arrest the suspect." *Jacobson v. State*, 476 So. 2d 1282, 1287 (Fla. 1985). "On its face, [§ 843.02] is unambiguous. It is intended to apply to any situation where a person willfully interferes with the lawful activities of the police. Nothing indicates that it applies only when police are arresting a suspect . . . ." *N.H.*, 890 So. 2d at 516.

22-14106               Opinion of the Court                    15

Because the officers had arguable probable cause to arrest Colon under Fla. Stat. § 843.02, his § 1983 false arrest claims fail. Accordingly, we reverse the district court's order denying qualified immunity and summary judgment to the officers on Colon's false arrest claim.[7]

B.      Excessive Force

On appeal, the officers argue the district court erred in denying them qualified immunity and summary judgment on Colon's excessive force claims.

The Fourth Amendment encompasses "the right to be free from the use of excessive force in the course of an arrest." *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1272 (11th Cir. 2021). "[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Myers v. Bowman*, 713 F.3d 1319, 1327 (11th Cir. 2013) (quotation

---

[7] The parties dispute whether Corporal Raslowsky was an arresting officer subject to Colon's false arrest claim. To be liable for a false arrest, an officer (1) must have participated in the arrest or (2) must have been the arresting officer's supervisor or in their chain of command. *Brown v. City of Huntsville*, 608 F.3d 724, 736-37 (11th Cir. 2010). Raslowsky was an active participant in Colon's arrest—he detained Colon, tased Colon after Smith's tackle, and then instructed Smith to handcuff Colon. Further, Raslowsky was in Smith's chain of command. Smith testified that Raslowsky, as a corporal, had seniority over him, and Smith testified that Raslowsky was *his* corporal, stating, "So, we – originally, my corporal, Raslowsky, he was the first responding deputy there. I backed him up on the call." Even though Corporal Raslowsky was an arresting officer, Colon's false arrest claims fail on other grounds.

marks omitted). Still, the manner in which an officer conducts an arrest "must nonetheless comply with the Fourth Amendment." *Richmond v. Badia*, 47 F.4th 1172, 1180 (11th Cir. 2022).

In evaluating an excessive force claim, we utilize a non-exhaustive list of factors set forth by the Supreme Court in *Graham v. Connor*, 490 U.S. 386, 396 (1989), as well as factors added by our caselaw. *Sebastian v. Ortiz*, 918 F.3d 1301, 1308 (11th Cir. 2019). These factors include (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," (3) whether the suspect "is actively resisting arrest or attempting to" flee, (4) "the relationship between the need and amount of force used," and (5) "the extent of the injury inflicted" on the suspect. *Id.* (quotation marks omitted).

As explained above, for the purposes of this appeal, we must take as true Colon's account of the events. *See Stephens*, 852 F.3d at 1313-14; *supra* at 6. Under Colon's version, Raslowsky lunged at Colon, Colon did not push or shoulder check Raslowsky, Smith tackled Colon to the ground, and Raslowsky tased Colon, all while Colon posed no immediate risk, was not resisting an arrest, and was not attempting to evade his arrest by fleeing.

Under Colon's version, there was no need for any force at all and thus the force used—tackling Colon to the ground and tasing him—was excessive and not proportionate. And Colon suffered a sore back and a sprained wrist from the officers' force.

Accepting Colon's events as true, the officers violated his clearly established Fourth Amendment right to be free from

excessive force during a detention and an arrest when they used gratuitous force and tackled and tased a non-resisting, non-violent Colon. *See Johnson*, 18 F.4th at 1272 ("[A] police officer violates the Fourth Amendment if he uses gratuitous force against a suspect who is secure, not resisting, and not a safety threat to the officer or other officers.").

Further, it was clearly established at the time of the officers' conduct "that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008); *see also Saunders v. Duke*, 766 F.3d 1262, 1265 (11th Cir. 2014) (characterizing as gratuitous force an officer slamming a non-resisting suspect's head into the ground); *Fils v. City of Aventura*, 647 F.3d 1272, 1292 (11th Cir. 2011) (holding it was clearly established that using a taser "is excessive where the suspect is non-violent and has not resisted arrest").

At this summary judgment juncture, we affirm the denial of qualified immunity to the officers on Colon's § 1983 excessive force claims.

## C.    Malicious Prosecution

This brings us to the officers' appeal of the denial of qualified immunity on Colon's malicious prosecution claims.

To prevail on a Fourth Amendment malicious prosecution claim, the plaintiff must prove "(1) that the defendant violated his Fourth Amendment right to be free from seizures *pursuant to legal process* and (2) that the criminal proceedings against [the plaintiff]

terminated in his favor." *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020) (emphasis added).

While Colon's warrantless arrest—a seizure *without* legal process—would support a false arrest claim, it cannot support his malicious prosecution claims. *See Williams v. Aguirre*, 965 F.3d 1147, 1157-58 (11th Cir. 2020) (noting false arrest and malicious prosecution claims concern different kinds of seizures). Instead, a malicious prosecution claim must be premised on a seizure *pursuant to* legal process, such as a warrant-based arrest or a seizure "following an arraignment, indictment, or probable-cause hearing." *Id.* at 1158. Colon presented no evidence of such a seizure, so his malicious prosecution claims necessarily fail.

At oral argument, Colon suggested his malicious prosecution claims could be based on the criminal "information" filed against him on May 18, 2017. But there is no evidence that Colon was seized after that "information" was filed. The only evidence of a seizure is the warrantless arrest and Colon's related 6 or 7 hours in jail on February 6, 2017. That was a seizure without legal process and does not support a malicious prosecution claim.[8]

---

[8] As to the malicious prosecution claim, the district court missed the mark by addressing whether there was probable cause under Fla. Stat. § 843.02 (resisting without violence), a crime for which Colon was not charged. Just like the seizure requirement, the probable-cause inquiry for malicious prosecution and false arrest claims is distinct. In the false arrest context, we assess whether there was probable cause to arrest for any crime, even uncharged crimes, such as Fla. Stat. § 843.02. *See Garcia v. Casey*, 75 F.4th 1176,

For the above reasons, we reverse the denial of summary judgment to the officers on Colon's malicious prosecution claims.

## IV.    FLORIDA LAW CLAIMS

### A.    Jurisdiction

We have a threshold obligation to ensure that we have appellate jurisdiction, even where no party has raised the issue. *Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1227, 1233 (11th Cir. 2020).

Colon's state law claims present a jurisdictional wrinkle. "Qualified immunity is a defense to federal causes of action and does not protect officials from claims based upon state law." *Andreu v. Sapp*, 919 F.2d 637, 640 (11th Cir. 1990). Florida law provides official immunity from suit for state tort claims. *See* Fla. Stat. § 768.28(9)(a); *Keck v. Eminisor*, 104 So. 3d 359, 366 (Fla. 2012). And state officials may immediately appeal the non-final denial of state official immunity from suit. *See Jones v. Fransen*, 857 F.3d 843, 849 (11th Cir. 2017). But Raslowsky and Smith did not raise Florida law official immunity as a defense to Colon's state law claims at

---

1187 (11th Cir. 2023). But in the malicious prosecution context, we assess probable cause for the crimes actually charged that justified the seizure. *Williams*, 965 F.3d at 1161-62. Because Colon presented no evidence that he was seized *pursuant to legal process*, we need not address whether there was probable cause for the crimes for which he was actually charged or whether probable cause had to exist for all or just one of the crimes actually charged.

summary judgment, and they do not address this immunity on appeal.

In other words, when the district court denied summary judgment to Raslowsky and Smith on Colon's state law claims, it did not deny them an immunity from suit. We thus lack an independent jurisdictional basis to review the denial of summary judgment on Colon's state law claims.

However, we still have the option to exercise our discretionary pendent appellate jurisdiction, which allows us to review non-appealable matters that are "inextricably intertwined with an appealable decision." *Smith v. LePage*, 834 F.3d 1285, 1292 (11th Cir. 2016) (quotation marks omitted). Matters are sufficiently intertwined where they "implicate the same facts and the same law." *Id.* (quotation marks omitted and alteration adopted). Here, the same facts and law that are necessary to resolve Colon's § 1983 law claims also resolve his state law claims. We choose to exercise such pendent jurisdiction to reach Colon's state law claims.

B.    False Imprisonment

We can make short work of Colon's state law false imprisonment claims because the officers had actual probable cause for Colon's arrest. *Baxter v. Roberts*, 54 F.4th 1241, 1271 (11th Cir. 2022) (holding "probable cause is a complete bar" to Florida false imprisonment claims); *Bolanos v. Metro. Dade Cnty.*, 677 So. 2d 1005, 1005 (Fla. Dist. Ct. App. 1996) (same). Above, in analyzing Colon's § 1983 false arrest claims, we explained that the officers had arguable probable cause to arrest Colon, which defeated those

claims.  Because the officers asserted qualified immunity as a defense to Colon's § 1983 false arrest claims, "[a]rguable probable cause, not the higher standard of actual probable cause," governed our analysis.  *See Jones v. Cannon*, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999).  But, as highlighted in our jurisdiction discussion, qualified immunity does not extend to Colon's state law false imprisonment claims, and the officers have not raised any immunity as to those claims.  Therefore, it seems that actual probable cause governs our analysis of Colon's state law false imprisonment claims.  *See Baxter*, 54 F.4th at 1271.

While actual probable cause is a more demanding standard than arguable probable cause, it "is not a high bar."  *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quotation marks omitted).  "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  *N.H. v. State*, 358 So. 3d 477, 481 (Fla. Dist. Ct. App. 2023) (quotation marks omitted).  Given the above Florida law about the § 843.02 offense, we conclude that the officers had actual probable cause to arrest Colon for obstructing an officer without violence when, while lawfully detained, Colon failed to present his identification.  *See Moore*, 806 F.3d at 1049; *K.A.C.*, 707 So. 2d at 1177; *N.H.*, 890 So. 2d at 517.  As a result, we reverse the denial of summary judgment to the officers on Colon's state law false imprisonment claims.

C.    Battery

Similarly, and as the parties agree, Colon's state law battery claims rise and fall with his § 1983 excessive force claims.  "Under

Florida law, force used by a police officer during an arrest is transformed into a battery where the force used was clearly excessive." *Johnson*, 18 F.4th at 1275. "[T]o determine whether the force used was excessive, Florida courts analyze whether the amount of force used was reasonable under the circumstances." *Id.* In light of our conclusion above that a reasonable jury could conclude Corporal Raslowsky and Deputy Smith used excessive force, they were not entitled to summary judgment. *See id.* We affirm the denial of summary judgment to the officers on Colon's state law battery claims.

D.     <u>IIED</u>

Under Florida law, an IIED claim has four elements: "(1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe." *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990) (citing *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 279 (Fla. 1985)).

Among other things, the officers argue Colon failed to present evidence of this fourth element—severe emotional distress. We agree.

Under Florida law, "severe emotional distress means emotional distress of such a substantial quality or enduring quality that no reasonable person in a civilized society should be expected to endure it." *Kim v. Jung Hyun Chang*, 249 So. 3d 1300, 1305 (Fla. Dist. Ct. App. 2018) (quotation marks omitted and alteration adopted). To prove an IIED claim, a plaintiff must show "both the

existence of emotional distress and the quality of that emotional distress such that a factfinder may reasonably infer both that the distress in fact happened and that the quality of that distress was too much for a reasonable person to be expected to bear." *Id.* at 1306.  Outrageous conduct, standing alone, cannot prove severe emotional distress. *Id.* at 1308.

Here, Colon's evidence failed to show that he suffered severe emotional distress, as required under Florida law.  At most, Colon stated he missed one day of work, totaling $105 in lost wages, and that he was told he could lose his job for missing work, although he did not actually lose his job.  This falls far short of what is required under Florida law to show an IIED claim.

Therefore, we reverse the denial of summary judgment to the officers on Colon's IIED claim.

## V.    CONCLUSION

For the above reasons, we (1) affirm the denial of summary judgment to Corporal Raslowsky and Deputy Smith on Colon's § 1983 excessive force and state law battery claims, (2) reverse the denial of summary judgment to the officers on Colon's § 1983 false arrest, § 1983 malicious prosecution, state law false imprisonment, and state law IIED claims, and (3) remand for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART.**